No. 24-10790

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

ASSOCIATED GENERAL CONTRACTORS OF AMERICA; ASSOCIATED GENERAL CONTRACTORS OF TEXAS; LUBBOCK CHAMBER OF COMMERCE; J. LEE MILLIGAN, INCORPORATED,

Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF LABOR; JULIE SU, in her official capacity as Acting United States Secretary of Labor,

Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of Texas

## BRIEF FOR APPELLANTS

*Of Counsel:*

SEEMA NANDA
*Solicitor of Labor*

JENNIFER S. BRAND
*Associate Solicitor*

JONATHAN T. REES
*Counsel for Contract Labor Standards*

JESSE Z. GRAUMAN
DAVID EDELI
*Senior Attorneys*
*U.S. Department of Labor*
*200 Constitution Ave., NW*
*Washington, DC 20210*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

LEIGHA SIMONTON
*United States Attorney*

ABBY C. WRIGHT
MARK B. STERN
BENJAMIN M. SHULTZ
*Attorneys, Appellate Staff*
*Civil Division, Room 7211*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3518*
*Benjamin.Shultz@usdoj.gov*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as defendants-appellants are all governmental parties.  5th Cir. R. 28.2.1.

## STATEMENT REGARDING ORAL ARGUMENT

The district court in this case preliminarily enjoined two regulations issued by the Department of Labor, on a nationwide basis, that affect numerous construction contracts with the federal government and federally-funded entities.  The United States believes oral argument would assist the Court in resolving this appeal.

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ................................................................1

STATEMENT OF THE ISSUES...................................................................1

STATEMENT OF THE CASE .....................................................................2

    **A.** Statutory Background ........................................................................2

    **B.** Factual And Regulatory Background ...............................................3

    **C.** Prior Proceedings .............................................................................8

SUMMARY OF ARGUMENT....................................................................12

STANDARD OF REVIEW ..........................................................................16

ARGUMENT ...............................................................................................17

I.    Plaintiffs Have Not Demonstrated A Likelihood Of Success
    On The Merits...........................................................................................17

        A.    DOL Has Statutory Authority To Promulgate The Material
              Supplier Regulation, And It Did Not Act Arbitrarily In Doing So ........17

        B.    DOL Had Statutory Authority To Promulgate The Trucking
              Regulation, And It Did Not Act Arbitrarily In Doing So ........................23

        C.    DOL Did Not Violate The Regulatory Flexibility Act ............................31

II.    Plaintiffs Have Failed To Demonstrate Irreparable Harm
    Justifying The Grant Of Preliminary Injunctive Relief..........................42

CONCLUSION ............................................................................................45

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                      **Page(s)**

*Alenco Commc'ns, Inc. v. FCC,*
   201 F.3d 608 (5th Cir. 2000) ...............................................................15, 31-32, 32, 36

*Ball & Brosamer, Inc. v. Reich,*
   24 F.3d 1447 (D.C. Cir. 1994) ...................................................................................26

*Building & Construction Trades Dep't, AFL-CIO v. U.S. Dep't of Labor Wage Appeals Bd.,*
   932 F.2d 985 (D.C. Cir. 1991) ...........................................................................10, 26

*Camp v. Pitts,*
   411 U.S. 138 (1973) ....................................................................................................36

*City of El Cenizo v. Texas,*
   890 F.3d 164 (5th Cir. 2018) ......................................................................................17

*Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.,*
   322 U.S. 102 (1944) .................................................................................................4, 18

*FCC v. Prometheus Radio Project,*
   592 U.S. 414 (2021) ....................................................................................................22

*F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.,*
   417 U.S. 116 (1974) ....................................................................................................18

*Frank Bros. v. Wisconsin Dep't of Transp.,*
   409 F.3d 880 (7th Cir. 2005) ......................................................................................27

*Goonsuwan v. Ashcroft,*
   252 F.3d 383 (5th Cir. 2001) ......................................................................................37

*Harrison v. Brookhaven Sch. Dist.,*
   82 F.4th 427 (5th Cir. 2023) .......................................................................................30

*Harrison v. Young,*
   48 F.4th 331 (5th Cir. 2022) .......................................................................................16

*H.B. Zachry Co. v. United States*,
344 F.2d 352 (Ct. Cl. 1965) ................................................................. 27

*Holy Trinity Church v. United States*,
143 U.S. 457 (1892) ............................................................................. 16

*Kisor v. Wilkie*,
588 U.S. 558 (2019) ............................................................................. 30

*Loper Bright Enters. v. Raimondo*,
144 S. Ct. 2244 (2024) ........................................................................ 21

*L.P. Cavett Co. v. U.S. Dep't of Labor*,
101 F.3d 1111 (6th Cir. 1996) ............................................................ 26

*Medina Cty. Envtl. Action Ass'n v. Surface Transp. Bd.*,
602 F.3d 687 (5th Cir. 2010) .............................................................. 37

*OnPath Fed. Credit Union v. U.S. Dep't of Treasury*,
734 F.4th 291 (5th Cir. 2023) ............................................................. 37

*United States v. Abbott*,
110 F.4th 700 (5th Cir. 2024) ............................................................. 17

*United States v. Binghamton Const. Co.*,
347 U.S. 171 (1954) .............................................................................. 2

**Statutes:**

Administrative Procedure Act:
5 U.S.C. § 706 .............................................................................. 36, 41
5 U.S.C. § 706(2)(B) ........................................................................... 37

Davis-Bacon Act,
40 U.S.C. § 3141 *et seq.* ...................................................................... 2
40 U.S.C. § 3142(a) ................................................................... 2, 27, 28
40 U.S.C. § 3142(b) ............................................................................... 2
40 U.S.C. § 3142(c)(1) ................................... 1, 2, 4, 12, 14, 17, 19, 23, 28

Regulatory Flexibility Act,
5 U.S.C. § 601 *et seq.* ........................................................................... 9

5 U.S.C. § 604(a) ....................................................................31, 39
5 U.S.C. § 604(a)(4) ......................................................................40
5 U.S.C. § 604(a)(5) ......................................................................39
5 U.S.C. § 604(a)(6) ......................................................................39
5 U.S.C. § 605 ...............................................................................32
5 U.S.C. § 611(a) ....................................................................36, 41
5 U.S.C. § 611(c) ....................................................................36, 41

Reorganization Plan No. 14 of 1950,
    64 Stat. 1267 .......................................................................3, 22

28 U.S.C. § 1292(a)(1) ....................................................................1

28 U.S.C. § 1331 .............................................................................1

40 U.S.C. § 3145(a) ...................................................................3, 22

42 U.S.C. § 18851 ...........................................................................3

49 U.S.C. § 5333(a) .........................................................................3

**Regulation:**

29 C.F.R. § 5.2...................................................6, 7-8, 19, 23-24, 24

**Legislative Material:**

75 Cong. Rec. 12366 (1932) ....................................................4-5, 18

**Other Authorities:**

DOL, *List of Current Davis-Bacon and Related Acts*,
    https://www.dol.gov/sites/dolgov/files/WHD/government-contracts/
    DBRA-list.xlsx ..........................................................................3

29 Fed. Reg. 95 (Jan. 4, 1964) .........................................................3

37 Fed. Reg. 21138 (Oct. 5, 1972) ...................................................3

47 Fed. Reg. 23658 (May 28, 1982) ................................................24

48 Fed. Reg. 19532 (Apr. 29, 1983) ........................................................................3

87 Fed. Reg. 15698 (Mar. 18, 2022)................................................. 4, 5, 7, 8, 24

88 Fed. Reg. 57526 (Aug. 23, 2023)........................................ 4, 6, 7, 8, 18, 18-19, 19, 23,
                                                                    24, 25, 28, 32, 33, 34, 35, 38, 40, 41

*Laborer*, Dictionary.com,
    https://perma.cc/F6AW-M9Y8 ......................................................................25

*Laborer*, Merriam-Webster Dictionary Online,
    https://perma.cc/3BXY-WKXW .................................................................25

## STATEMENT OF JURISDICTION

Plaintiffs brought this case to challenge several regulations issued by the Department of Labor (DOL) that help enforce the Davis-Bacon Act and related statutes.  ROA.137-38.  In their operative complaint, plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331.  ROA.138.  Plaintiffs sought a preliminary injunction as to some of the regulations at issue, *see* ROA.301, and the district court issued the requested injunction on June 24, 2024, *see* ROA.742-81.  DOL timely filed a notice of appeal on August 22, 2024.  ROA.782.  This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

Under the Davis-Bacon Act and related statutes, contractors and subcontractors on certain construction contracts must pay specified minimum wages to "all mechanics and laborers employed directly on the site of the work."  40 U.S.C. § 3142(c)(1).  DOL has authority to promulgate rules to enforce this requirement, and DOL issued an omnibus rulemaking in 2023.  The questions presented are the following:

(1) Whether the district court properly enjoined a DOL rule clarifying that entities who otherwise qualify as "contractors" do not lose that status simply because some of their work includes "material supply" activities.

(2) Whether the district court properly enjoined a DOL rule clarifying that truck drivers engaged in loading, unloading, and similar activities "directly on the site of the work" are generally covered by the Davis-Bacon Act for that on-site time.

## STATEMENT OF THE CASE

### A.     Statutory Background

The Davis-Bacon Act, 40 U.S.C. § 3141 *et seq.*, was enacted in 1931 "as a minimum wage law designed for the benefit of construction workers." *United States v. Binghamton Const. Co.*, 347 U.S. 171, 178 (1954).  In its current form, the statute generally applies to construction contracts where either the federal or D.C. government is a party.  40 U.S.C. § 3142(a).  Such contracts are supposed to contain various provisions, including one stating that "the contractor or subcontractor shall pay all mechanics and laborers employed directly on the site of the work" specified minimum wages, "regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and the laborers and mechanics." *Id.* § 3142(c)(1).  The specified minimums are the prevailing wages in the relevant locality, for the relevant job type, as determined by DOL.  *Id.* § 3142(b).

Over time, Congress has enacted additional statutes that apply Davis-Bacon-type requirements to many other construction projects, beyond just those being built by the federal and D.C. governments.  Generally, these are projects where specified federal funds or other commitments (such as loan guarantees or insurance) are involved, but the entity contracting for the construction is not a federal agency.

2

Collectively, these other statutes are known as "Related Acts," and DOL maintains a list of Related Acts on its website. The agency currently identifies over 70 different Related Acts. *See* DOL, *List of Current Davis-Bacon and Related Acts*, https://www.dol.gov/sites/dolgov/files/WHD/government-contracts/DBRA-list.xlsx.

Both the original Davis-Bacon Act, and the various Related Acts, assign an important enforcement role to DOL. Most relevant here, 40 U.S.C. § 3145(a) declares that DOL "shall prescribe reasonable regulations for contractors and subcontractors engaged in constructing, carrying out, completing, or repairing public buildings, public works, or buildings or works that at least partly are financed by a loan or grant from the Federal Government." 40 U.S.C. § 3145(a). And Reorganization Plan No. 14 of 1950, 64 Stat. 1267, 1267, states that "to assure . . . consistency of enforcement," DOL must "prescribe appropriate standards, regulations, and procedures" regarding the Davis-Bacon Act, and initiate investigations, as the agency "deems desirable." The Related Acts also generally contain cross references to one or both of these provisions, and specifically indicate that DOL's powers under those provisions apply to those Related Acts. *See, e.g.*, 42 U.S.C. § 18851; 49 U.S.C. § 5333(a).

### B.    Factual And Regulatory Background

Over the years, DOL has enacted comprehensive regulations regarding the Davis-Bacon Act and the Related Acts, with many of those rules dating to the 1980s and earlier. *See, e.g.* 48 Fed. Reg. 19532 (Apr. 29, 1983); 37 Fed. Reg. 21138 (Oct. 5,

3

1972); 29 Fed. Reg. 95 (Jan. 4, 1964).  In August 2023, DOL issued a comprehensive, omnibus update to many of these rules.  *See* 88 Fed. Reg. 57526 (Aug. 23, 2023).  This omnibus update followed standard notice and comment procedures.  *See* 87 Fed. Reg. 15698 (Mar. 18, 2022) (Notice of Proposed Rulemaking).  Two specific changes are particularly relevant to this appeal.

    1.  <u>The Material Supplier Update</u>.  The Davis-Bacon Act applies its wage minimums to all "contractor[s] or subcontractor[s]" performing work on a covered construction project, without any expressly articulated exception.  40 U.S.C. § 3142(c)(1).  And the statute contains no reference at all to "material suppliers."  But in interpreting the terms "contractor" and "subcontractor," DOL has long taken the view that those terms exclude "bona fide 'material suppliers' or 'materialmen.'"  88 Fed. Reg. at 57615 (citing DOL guidance from the 1960s); *see also* ROA.407-11. DOL's interpretation is informed in part by *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.*, 322 U.S. 102 (1944), which noted (in interpreting a different statute about federal construction contracts) that "in the building trades, a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, *thus excluding ordinary laborers and materialmen.*"  *Id.* at 109 (emphasis added).  DOL's view also finds support in the Davis-Bacon Act's legislative history, as there are indications that Congress intended for the statute to apply to construction companies, but did not intend to regulate wages of manufacturers, suppliers, or private industry more broadly.  *See* 75

Cong. Rec. 12366 (1932) (statement of Rep. Connery). DOL's understanding is colloquially known as the "material supplier exception."[1]

Prior to 2023, DOL had not expressly codified the "material supplier exception" into its regulations. Instead, the agency articulated this point in enforcement guidance. *See, e.g.*, ROA.407-11 (1962 guidance document). As DOL explained in a 2016 agency handbook, "bona fide material suppliers" who manufacture and deliver materials to a work site from a facility serving the public "are not considered contractors" for Davis-Bacon purposes. ROA.445. DOL also explained in the same handbook, however, that qualifying companies truly had to be material suppliers in all respects and could not also be contractors on the same contract. If an ostensible material supplier nonetheless *did* undertake to perform a part of a construction contract as a contractor or subcontractor, its "laborers and mechanics employed at the site of the work" would then be covered by the Davis-Bacon Act "in the same manner as those employed by any other contractor or subcontractor." ROA.445.

DOL's pre-2023 guidance also built in some enforcement discretion. The agency recognized that there are some situations in which an employee of an entity that would otherwise be considered a true material supplier nonetheless performes

---

[1] A small number of Related Acts do not restrict their coverage to just contractors and subcontractors on a project and instead apply more broadly. For these Related Acts (sometimes called "development statutes"), DOL has never articulated any material supplier exception. *See* 87 Fed. Reg. at 15730.

on-site construction or repair work that is "more than incidental" to material supply. ROA.445 (emphasis removed). The agency's 2016 handbook explained that such employees "would be covered" by the Davis-Bacon Act "and due the applicable wage rate" for the time they spent engaging in that construction or repair work, then further explained that "for enforcement purposes," if "such an employee" did such qualifying on-site work for "more than 20 percent" of their workweek, that employee would need to be paid Davis-Bacon wages for "all time spent on the site during that workweek." ROA.445. The agency's guidance thus also implied as an enforcement matter (though did not directly state) that other employees of such an entity who were engaged in pure material supply activities did not need to be paid Davis-Bacon rates for their on-site time.

DOL's 2023 rulemaking formalized the agency's view that only true material suppliers are excluded from the statute but declined to formalize the agency's previously announced enforcement discretion policy. *See* 88 Fed. Reg. at 57622-24. Specifically, DOL amended the regulatory definition of the term "contractor" so that it did not include "an entity that is a material supplier." *Id.* at 57732 (amending 29 C.F.R. § 5.2). The agency then defined the term "material supplier" as, among other things, an entity whose "only obligations for work on the contract . . . are the delivery of materials" or other supplies (including "incidental" activities), and who is not also engaged in additional "construction, prosecution, completion, or repair work at the site of the work." *Id.* at 57733. This in effect meant that for entities who did anything

6

more than true material supply on a given contract, all on-site work by their laborers and mechanics would normally be paid at Davis-Bacon rates, without regard to whether any individual employee's on-site non-delivery time met the 20% threshold previously used for enforcement purposes.  DOL explained that this codification simply formalized its longstanding statutory interpretation, and further explained that the agency was jettisoning the 20% standard used in enforcement guidance because that standard was less consistent with the text of the Davis-Bacon Act and had created confusion and less predictability.  *See id.* at 57622-24; *see also id.* at 57623-24 (discussing how many employers had been misinterpreting the agency's enforcement guidance, including by applying it beyond material suppliers).

    2.  The Truck Driver Rule.  Before 2023, DOL's enforcement guidance indicated that truck drivers employed by a contractor or subcontractor (but not by a material supplier) had to be paid prevailing wages for time spent loading and unloading at the construction site, so long as such time was not "*de minimis.*"  87 Fed. Reg. at 15733; *see also* ROA.446-47 (2016 agency manual).  The 2023 regulation formally codified that principle, amending the definition of the term "construction, prosecution, completion, or repair" to include "activities conducted by a truck driver or truck driver's assistant on the site of the work that are essential or incidental to the transportation of materials or supplies to or from the site of the work, such as loading, unloading, or waiting for materials to be loaded or unloaded," so long as the time at "the site of the work is not *de minimis.*"  88 Fed. Reg. at 57732 (amending 29

C.F.R. § 5.2).[2]  DOL explained that formally codifying its guidance would enhance clarity, and it noted that many employers had wrongfully been equating DOL's carve-out for "*de minimis*" on-site activities by truck drivers (which governed all drivers employed by contractors) to be the same as the 20% enforcement policy DOL had previously applied just for purposes of the material supplier exception.  *Id.* at 57625.

## C.     Prior Proceedings

This case was brought by three trade associations and one corporation: Associated General Contractors of America, Associated General Contractors of Texas, Lubbock Chamber of Commerce, and J. Lee Milligan, Inc.  ROA.139-41.  In the operative complaint, plaintiffs challenged four aspects of DOL's 2023 omnibus rulemaking: (1) its codification of the material supplier exception; (2) its codification of the agency's truck driver guidance; (3) a third provision concerning contracts that mistakenly omit required Davis-Bacon clauses (sometimes referred to as the "operation of law" provision), and (4) a fourth provision concerning secondary construction sites.  ROA.144-49.  Plaintiffs contended that each of these rules

---

[2] As previously noted, *see supra* p.5 n.1, DOL has long understood that a small number of Related Acts are worded in such a way that they have no material supplier exception at all.  For those statutes, truck drivers employed by material suppliers would be treated the same as truck drivers employed by contractors and subcontractors.  *See* 88 Fed. Reg. at 57625 (discussing "development statutes"); 87 Fed. Reg. at 15733-34 (same).

exceeded DOL's statutory authority;[3] that DOL acted arbitrarily and capriciously by promulgating these rules; and that DOL's promulgation of these rules violated the Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq.* ROA.156-160.

Thereafter, plaintiffs moved for a preliminary injunction regarding the first three challenged regulations. ROA.304-14. Although this was a challenge to agency action, and although the government filed the over 10,000-page administrative record with the court, *see* ROA.482-528, the district court elected to hold an evidentiary hearing at which plaintiffs presented the testimony of several witnesses, *see* ROA.348, 785-905. Both sides then submitted proposed findings of fact and conclusions of law. *See* ROA.635-98; ROA.699-741.

Two business days later, the court issued a 40-page order that copied *verbatim* plaintiffs' proposed findings and conclusions (other than deleting one sentence in plaintiffs' submission that had said the court would issue a scheduling order "setting pretrial deadlines and a trial date in the near future"). *Compare* ROA.702-41, *with* ROA.742-81. The order preliminarily enjoined DOL from enforcing the material supplier update, the trucking provision, and the operation of law provision, on a nationwide basis. ROA.779-80.

---

[3] Plaintiffs also recast their statutory claim as a "constitutional" claim by asserting that because DOL lacked statutory authority for its actions, the agency had violated the Take Care Clause and had improperly exercised legislative power reserved for Congress. ROA.155-56.

Relevant here, the court adopted plaintiffs' conclusion that the plaintiffs had shown a likelihood of success on the merits regarding the material supplier update and trucking provision. ROA.764. The court thought that DOL lacked statutory authority to issue the material supplier update, claiming that the new regulation "ignores the statutory language" in the Davis-Bacon Act because it "would reclassify employees of bona fide material suppliers as 'mechanics and laborers.'" ROA.771. Furthermore, the court thought that the material supplier update was arbitrary and capricious because it "discriminate[d]" against those bona fide material suppliers who "also operate . . . as contractors" on a project, in favor of those material suppliers who did pure material supply. ROA.771-72.

The court also thought DOL lacked statutory authority to issue the trucking provision. The court observed that the Davis-Bacon Act only applies to mechanics and laborers doing tasks at a worksite, then asserted that DOL had run afoul of that provision by regulating "transportation" as a separate category. ROA.769-70 (quotation marks omitted); *see also* ROA.770 (citing *Building & Construction Trades Dep't, AFL-CIO v. U.S. Dep't of Labor Wage Appeals Bd.*, 932 F.2d 985 (D.C. Cir. 1991)). The court added that it also believed the trucking regulation was arbitrary and capricious because there was ambiguity about precisely which activities fell under the regulation's "*de minimis*" exception. *See* ROA.762-63.

The court further concluded that DOL had run afoul of the Regulatory Flexibility Act in issuing these regulatory updates. The court claimed that under that

act, DOL's rulemaking had to assess the costs that its rulemaking imposed on small business.  ROA.772.  But, the court asserted, DOL had not adequately considered "the compliance costs" imposed from its "expan[sion]" of Davis-Bacon Act coverage to material suppliers and truck drivers.  ROA.774.  The court noted DOL's statements during the rulemaking that these provisions had codified existing policy with some minor changes, but the court thought that statement was refuted by testimony presented from two witnesses during the evidentiary hearing asserting that DOL had actually made "broad substantive changes."  ROA.774.  Additionally, the court claimed that DOL had failed to estimate the number of affected small business. ROA.774-75.

The court next concluded that plaintiffs would suffer irreparable injury from the material supplier and trucking provisions if they were not enjoined.  In the court's view, some of plaintiffs' members who do both material supply and contracting work would be placed at a "competitive disadvantage[]" relative to contractors who have no material supply operations.  ROA.776.  And the trucking provision would cause irreparable harm because employers would face "uncertainty" about what constituted "*de minimis*" time at the worksite, and so were likely to err on the side of paying Davis-Bacon wages for all driver time spent at the worksite.  ROA.776-77.

The court further opined that the other preliminary injunction factors did not favor DOL.  ROA.777.  And the court concluded that a nationwide injunction against the challenged regulations was appropriate because plaintiffs had brought a facial

challenge and because one of the plaintiffs was a nationwide organization. ROA.777-79.

DOL now appeals the district court's decision insofar as it preliminarily enjoined the material supplier update and the trucking regulation.[4]

## SUMMARY OF ARGUMENT

The Davis-Bacon Act guarantees wage minimums for employees of "contractor[s] or subcontractor[s]" performing specified kinds of work on a covered construction project. 40 U.S.C. § 3142(c)(1). As relevant on this appeal, DOL codified its interpretation of the act's treatment of two categories of laborers: individuals working for contractors or subcontractors that supply materials under the contract, and drivers that access worksites for loading, unloading, and similar activities. The two regulations set forth the agency's view on when such laborers are covered by the Davis-Bacon Act and when they are not. The regulations largely track prior DOL guidance, although the material supplier regulation withdraws previous enforcement discretion that permitted employees of material suppliers to perform limited work on the construction project without being classified as employees of a covered "contractor" or "subcontractor" under the statute.

---

[4] DOL is not challenging in this brief the nationwide scope of the preliminary relief, but the agency preserves for possible later proceedings the argument that more narrow relief would be appropriate if an injunction is to be granted.

The district court preliminarily enjoined these two regulations based largely on a misunderstanding of both the regulations at issue and the statutory scheme. The court faulted the agency for perceived deficiencies under the Regulatory Flexibility Act, improperly relied on testimony from an evidentiary hearing it held rather than looking to the administrative record, and found irreparable harm where there is none.

DOL's material supplier regulation was well within the agency's authority to promulgate. Although the statute never uses the word "material supplier," DOL has long understood that the terms "contractor" and "subcontractor" nonetheless do not include a true "material supplier," whose only obligations to perform work on the contract are material supply. Plaintiffs wholeheartedly agree that material suppliers are not contractors and subcontractors under the act. Indeed, they contend—and the district court agreed—that companies that supply materials can in some circumstances *never* be classified as contractors or subcontractors even when their employees perform the same work as employees of other contractors or subcontractors.

The material supplier regulation ensures instead that any entity that qualifies as a "contractor" or "subcontractor" under the Davis-Bacon Act is in fact treated as one under the statute, even if the entity also happens to engage in some activities that might colloquially be called "material supply." That commonsense understanding is the best reading of the statute, and the district court's contrary conclusion was based on its misperception that the regulation was somehow an interpretation of the term "mechanics and laborers," which it was not. Moreover, although the district court

13

thought that the regulation "arbitrarily" drew distinctions between contractors that also have their own material supply operations and pure material suppliers, there was nothing arbitrary about this distinction all. The distinction instead comes straight from the Davis-Bacon Act itself, which mandates that an employer pay wage minimums on every project where it qualifies as a "contractor," and has no language exempting contractors who also engage in material supply.

The district court's treatment of the trucking regulation was equally flawed. Under the Davis-Bacon Act, all "mechanics and laborers" working for contractors and subcontractors are entitled to statutory wage minimums while they are "employed directly on the site of the work." 40 U.S.C. § 3142(c)(1). DOL's trucking regulation recognized that one class of "laborers" (truckers and their assistants) were therefore entitled to these minimum wages for time they spent "on the site of the work" doing activities like loading, unloading, and waiting for items to be loaded and unloaded. The regulation also carefully carved out these truckers' off-site time—such as time spent driving to and from the work site—as *not* subject to Davis Bacon minimums. That straightforward application of the statute follows plainly from the statutory text, and in concluding otherwise, the district court failed to grapple with the actual regulation DOL promulgated, instead hypothesizing some other regulation that was attempting to require Davis-Bacon minimums for off-site travel. The court also took issue with DOL's attempt to provide regulated entities with additional flexibility, as the court complained that the agency had carved out a *de*

14

*minimis* exception for onsite trucking activities. But agencies are not required to eliminate all possible ambiguity when they promulgate regulations, and it was reasonable for the agency to provide this additional flexibility to contractors trying to comply with the statute. In any event, the remedy for any potential problem with the *de minimis* exception would be to excise that exception, not enjoin the regulation.

The district court further erred in concluding that DOL violated the Regulatory Flexibility Act. This Court has made clear that the Regulatory Flexibility Act merely imposes "procedural" requirements for the agency to consider various issues about small businesses during rulemaking and does not mandate any outcomes; judicial review is then solely to determine if the agency made a "reasonable, good-faith effort" to follow the required procedures. *Alenco Commc'ns, Inc. v. FCC*, 201 F.3d 608 (5th Cir. 2000). DOL more than met that standard here, devoting pages of analysis in the Federal Register to compliance with the Regulatory Flexibility Act, and even making various changes from its initial proposal in response to comments that had sought to reduce burdens on small entities. The district court ignored entirely the nature of the Regulatory Flexibility Act, choosing to hold an evidentiary hearing at which it considered evidence it believed relevant to its review. But the Regulatory Flexibility Act requires that judicial review be limited to the administrative record, and in any event the district court relied on evidence that did not undercut the agency's analysis. And the Court's other objections sought to impose obligations not actually

contained in the Regulatory Flexibility Act or were based on a clear misreading of the record.

Because of these legal errors, the district court seriously erred in concluding that plaintiffs had demonstrated a likelihood of success on the merits. That suffices to reverse the district court's injunction. But the district court also erred in concluding that plaintiffs would suffer irreparable harm that could be remedied by a preliminary injunction against the material supplier and trucking regulations. The material supplier regulation only affects a narrow class of contractors who do their own material supply work and would otherwise pay rates lower than required under the Davis-Bacon Act, yet the only two witnesses who claimed to work for contractors in that category indicated during their testimony that they already pay their drivers *more* than the Davis-Bacon Act requires in the relevant counties. For the trucker regulation, the court cited only its concern that the "*de minimis*" exception was ambiguous. That harm from the regulation was particularly speculative, since the "*de minimis*" exception was already contained in the agency's earlier guidance predating the rule. And the district court's concerns were at most grounds for enjoining the exception, rather than the full regulation.

## STANDARD OF REVIEW

This Court reviews the grant of a preliminary injunction for abuse of discretion, but in doing so reviews underlying factual findings for clear error while reviewing legal conclusions de novo. *Harrison v. Young*, 48 F.4th 331, 339 (5th Cir. 2022). A

preliminary injunction is an "extraordinary remedy," *United States v. Abbott*, 110 F.4th 700, 716 (5th Cir. 2024) (en banc) (quotation marks omitted), and a district court "should deny relief" unless the plaintiff has clearly showed that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm without the injunction; (3) the balance of equities favors it; and (4) the injunction is in the public interest. *Id.* at 706. The first of these factors—likelihood of success on the merits—is the "most important," *id.* (quotation marks omitted); *see also, e.g.*, *City of El Cenizo v. Texas*, 890 F.3d 164, 191-92 (5th Cir. 2018) (affirming preliminary injunction in part, and reversing preliminary injunction in part, solely based on the plaintiffs' likelihoods of success on the merits for their various claims).

## ARGUMENT

### I.   Plaintiffs Have Not Demonstrated A Likelihood Of Success On The Merits

#### A.   DOL Has Statutory Authority To Promulgate The Material Supplier Regulation, And It Did Not Act Arbitrarily In Doing So

1. The Davis-Bacon Act states that its wage minimums apply to all "contractor[s] or subcontractor[s]" performing specified kinds of work on a covered construction project. 40 U.S.C. § 3142(c)(1). The text contains no reference at all to "material suppliers." *See id.* Because material suppliers for a construction project are in some senses "contractors" or "subcontractors," they might well be covered by the plain text of the Davis-Bacon Act.

17

In interpreting the terms "contractor" and "subcontractor," however, DOL has long taken the view that those terms exclude "bona fide 'material suppliers' or 'materialmen.'" 88 Fed. Reg. at 57615 (citing DOL guidance from the 1960s). That position is in part informed by case law interpreting the Miller Act, which draws a key distinction between contractors and subcontractors on the one hand, and material suppliers on the other. *See Clifford F. MacEvoy Co.*, 322 U.S. at 109 (explaining, in the course of interpreting the term "subcontractor" in the Miller Act, that "in the building trades, a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, *thus excluding ordinary laborers and materialmen*" (emphasis added)).[5] DOL's view is also based in part on the Davis-Bacon Act's legislative history. *See* 75 Cong. Rec. 12366 (1932) (statement of Rep. Connery). Plaintiffs do not contest this principle, and instead embrace it. *See, e.g.*, ROA.309 (contending that the Davis-Bacon Act "does not cover material suppliers").

DOL's material supplier rule codified this longstanding distinction between "contractors and subcontractors" and "material suppliers." That is, the agency defined the term "contractor" (and thus also "subcontractor," *see* 88 Fed. Reg. at 57734) so that the term did not include "an entity that is a material supplier." *Id.* at

---

[5] The Miller Act also applies to government construction contracts. It requires contractors to post a surety bond, then allows laborers who work for the contractor to sue on that bond if the contractor fails to pay them. *See F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 118 (1974).

57732 (amending 29 C.F.R. § 5.2). In parallel, the agency defined the term "material supplier" to exclude entities that qualify as contractors or subcontractors—it said material suppliers are entities whose "only obligations for work on the contract . . . are the delivery of materials" or other supplies (including various incidental activities), and who are not also engaged in "construction, prosecution, completion, or repair work at the site of the work." *Id.* at 57733. The result is that when an entity does construction or other work that qualifies it as a "contractor" or "subcontractor" on a project for Davis-Bacon Act purposes, the entity is then necessarily not the kind of material supplier excluded from the statutory terms "contractor" and "subcontractor"—even though the entity might nonetheless engage in some activities that qualify as "material supply" in a colloquial sense.

Given DOL's unchallenged understanding that the terms "contractor" and "subcontractor" exclude material suppliers, the agency's material supplier regulation is by far the most sensible reading of the statute. The Davis-Bacon Act applies to "contractors" and "subcontractors" working on specified projects, 40 U.S.C. § 3142(c)(1), and requires those employers to pay Davis-Bacon wages to all laborers and mechanics doing on-site work. It would make little sense if an employer did activities qualifying it as a "contractor" or "subcontractor," yet could then also simultaneously claim to be an entity that was definitionally *not* a "contractor" or "subcontractor."

An example illustrates this point nicely. Suppose that a construction company wins a contract to build a federal office building, and then dispatches 50 workers to perform various construction tasks at the site of the work (such as operating cranes and forklifts, fastening steel frame pieces together, and similar activities). That company is undeniably a "contractor" for Davis-Bacon Act purposes. And that conclusion would remain the same even if the company happens to also operate a stone quarry and uses some other employees to deliver stone from its quarry to the construction site. Quarry or not, the company is a "contractor" on the construction project. So all the laborers and mechanics who work for that company are employed by a "contractor," and they are all entitled to Davis-Bacon wages for their onsite work on the project.

In reaching the opposite conclusion, the district court simply misunderstood the nature of the material supplier exception. The court asserted that the rule "ignores the statutory language" of the Davis-Bacon Act because it purportedly "reclassif[ies] employees of bona fide material suppliers as 'mechanics and laborers.'" ROA.771. But it does no such thing. Employees of both material suppliers (like a quarry operator), and contractors and subcontractors (like a construction company), can be mechanics and laborers. Employees of both can also spend time doing work at the site of the work. DOL's regulation simply draws a distinction between those mechanics and laborers employed by contractors and subcontractors (i.e. individuals whose employers are covered by the Davis-Bacon Act) and those mechanics and

20

laborers employed by material suppliers (i.e. individuals whose employers are excluded from the Davis-Bacon Act because they are neither contractors nor subcontractors).

The district court's misunderstanding also led to its puzzling assertion that the rule somehow "ignores" statutory language because it covers an entity engaged in some legitimate material supply activities due to that entity's "connection to a contractor or subcontractor." ROA.771. This gets matters entirely backwards. The statutory text is the reason why the relevant touchstone is whether an entity engaging in material supply activities qualifies as a "contractor or subcontractor." Contractors and subcontractors are unquestionably covered by the Davis-Bacon Act. It does not ignore the act to conclude that contractors and subcontractors are so covered. And tellingly, the district court failed to identify any textual basis for the exclusion of material suppliers other than the notion that the terms "contractor" and "subcontractor" exclude pure material suppliers.

Because the agency's reading is easily the best reading of the statute, this Court need go no farther on this issue. In any event, the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), further recognized that certain statutory delegations can give agencies "flexibility" in how they implement statutory provisions. *Id.* at 2263 (quotation marks omitted). The Court specifically held up as examples of this statutes that let agencies promulgate "appropriate" or "reasonable" rules. *Id.* (quotation marks omitted). That is this case, as DOL's rulemaking authorities under the Davis-Bacon Act and related statutes employ both

terms.  *See* 40 U.S.C. § 3145(a) (directing DOL to "prescribe reasonable regulations" implementing the statute); 64 Stat. at 1267 (directing DOL to "prescribe appropriate standards, regulations, and procedures" regarding the Davis-Bacon Act and related statutes).  This further demonstrates the propriety of how DOL has implemented the governing statute.[6]

2.  The district court erred similarly in concluding that the material supplier rule was arbitrary and capricious.  Judicial review under the Administrative Procedure Act (APA) is restricted to the deferential arbitrary and capricious standard, under which "a court may not substitute its own policy judgment for that of the agency."  *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  A reviewing court's job is simply to ensure "that the agency has acted within a zone of reasonableness and . . . has reasonably considered the relevant issues and reasonably explained the decision."  *Id.*

The district court's objection to the material supplier rule not only failed to apply this deferential standard but also fails on its own terms.  The court asserted that the rule "arbitrarily punishes those contractors that also maintain commercial material supplier operations," since they might have to pay Davis-Bacon wage minimums that a pure material supplier would not.  ROA.762; *see also* ROA.771-72.  But there is

---

[6] Because DOL had statutory authority to issue the rule, the district court also erred in claiming a constitutional violation.  The sole constitutional problem identified by the court was that DOL had supposedly issued regulations without statutory authority, which the court viewed as both a "Take Care" issue, and as a separation of powers issue.  *See* ROA.768-69.

nothing "arbitrary" about this distinction at all. Instead, as already explained, the distinction comes from the Davis-Bacon Act itself, which distinguishes between entities that qualify as a "contractor or subcontractor" and those that do not. 40 U.S.C. § 3142(c)(1). DOL's rule simply recognizes that when an employer does construction work that qualifies it as a "contractor or subcontractor" under the statute for a given project, then the entity should as a result be treated as a "contractor or subcontractor" for that project.

### B.    DOL Had Statutory Authority To Promulgate The Trucking Regulation, And It Did Not Act Arbitrarily In Doing So

1. Under contracts governed by the Davis-Bacon Act, if an entity qualifies as a "contractor" or "subcontractor" then specified wage minimums apply to that entity's "mechanics and laborers employed directly on the site of the work." 40 U.S.C. § 3142(c)(1). DOL's truck driver regulation implements that statutory text as applied to one specific class of "laborers" while they are "employed directly on the site of the work": truck drivers and their assistants who are doing on-site activities like loading and unloading.

The regulation does this by specifically stating that statutorily covered activities include activities that are more than "*de minimis*" and that are "conducted by a truck driver or . . . assistant on the site of the work that are essential or incidental to the transportation of materials or supplies . . . such as loading, unloading, or waiting" for loading and unloading to be completed. 88 Fed. Reg. at 57732 (amending 29 C.F.R. §

5.2).  The regulation further makes clear that *offsite* transportation by these drivers and assistants is excluded from Davis-Bacon coverage.  *See id.* (unless specifically covered by DOL regulations, Davis Bacon wage minimums are not required for "transportation of materials or supplies to or from the site of the work").[7]  And these commonsense provisions simply codified DOL's longstanding guidance.  *See* 87 Fed. Reg. 15733; *see also* ROA.446-47 (2016 agency manual).

The district court nonetheless brusquely asserted that the regulation was deficient because truck drivers are not "mechanics [or] laborers employed directly on the site of the work."  ROA.769 (quotation marks omitted).  To the extent this was a suggestion that truck drivers and their assistants are not "laborers," the district court's objection is difficult to understand.  Longstanding DOL regulations dating back to the early 1980s—which plaintiffs have not challenged—recognize that "laborers and mechanics" are individuals whose "duties are manual or physical in nature . . . as distinguished from mental or managerial."  47 Fed. Reg. 23658, 23667 (May 28, 1982) (promulgating the definition now codified at 29 C.F.R. 5.2); *see also* ROA.958-59 (DOL Memorandum from 1958 articulating similar definition); *cf. Holy Trinity Church v. United States*, 143 U.S. 457, 463 (1892) (explaining that the "common understanding"

---

[7] A small number of Related Acts, sometimes called "development statutes," do not have a "site of the work" requirement.  *See* 88 Fed. Reg. at 57624, 57627.  For work performed under those statutes, DOL's regulations do not restrict coverage for truck drivers merely to on-site work.  *See id.* at 57732 (distinct definition of covered work for "development" statutes).

24

of the term "laborer" is that it refers to "manual" work and not the work of "the professional man"). Dictionary definitions are in accord. *See Laborer*, Merriam-Webster Dictionary Online, https://perma.cc/3BXY-WKXW (defining "laborer" as "a person who does unskilled physical work for wages"); *Laborer*, Dictionary.com, https://perma.cc/F6AW-M9Y8 (defining "laborer" as "a person engaged in work that requires bodily strength rather than skill or training"). Truck drivers and assistants engaged in the tasks at issue here, which include loading, unloading, and waiting for items to be loaded and unloaded, are thus surely working as "laborers." *Accord* ROA.959 (1958 DOL Memorandum noting that there is "no doubt that truck drivers" count as laborers). And it is telling that the district court provided no alternative definition of the term "laborer," let alone explained how the regulation differed from that definition.

The district court was equally in error if it was suggesting DOL had run afoul of the "site of the work" restriction. As already noted, for the main Davis-Bacon Act and for all Related Acts with a "site of the work" requirement, the truck driver regulation *only* requires Davis-Bacon wage minimums for activities "conducted by a truck driver or . . . assistant *on the site of the work*." 88 Fed. Reg. at 57732 (emphasis added). For all other activities—including the actual transportation of materials to and from the site of the work—the regulation makes clear that Davis-Bacon minimums are inapplicable. *See id.* The regulation thus does not add "transportation" to the list of activities covered by the statute, as the district court mistakenly

concluded. *See* ROA.869-70. It instead does almost exactly the opposite, since it excludes from its coverage those activities that drivers undertake to transport materials to and from the work site.

That conclusion is also fully consistent with the case law the district court cited. *See* ROA.770. The court relied heavily on *Building & Construction Trades Department, AFL-CIO v. United States Department of Labor Wage Appeals Board*, 932 F.2d 985 (D.C. Cir. 1991), but that case involved an earlier DOL regulation requiring Davis-Bacon wages for *all* time that delivery drivers spent working on a federal construction contract—most of which was spent driving to and from the work site. *Id.* at 988. It is thus of no moment that the D.C. Circuit concluded the statutory reference to the "site of the work" meant the Davis-Bacon Act could only apply to employees at the physical job site, and that the prior regulation impermissibly "include[d] off-site material delivery truckdrivers in the Act's coverage." *Id.* at 992. Here, the regulation at issue does not apply to the drivers' off-site activities. (It is also worth noting that the D.C. Circuit thought it self-evident that "material delivery truckdrivers" counted as "mechanics and laborers," *see id.*).

The other cases cited by the district court are even farther afield. In *Ball, Ball & Brosamer, Inc. v. Reich*, 24 F.3d 1447, 1452 (D.C. Cir. 1994), and *L.P. Cavett Co. v. United States Department of Labor*, 101 F.3d 1111, 1113-16 (6th Cir. 1996), the courts merely held that batch plants and gravel pits located miles from the actual construction sites did not qualify as the "site of the work." Neither decision discussed

how the statute applied to truck drivers for time spent at the site of the work itself. In *Frank Bros. v. Wisconsin Department of Transportation*, 409 F.3d 880 (7th Cir. 2005), proper interpretation of the Davis-Bacon Act was not even at issue as the case was instead about preemption of state wage laws. *See id.* at 885. Even so, in describing the Davis-Bacon Act's treatment of truck drivers, the court cited *Building & Construction Trades* and explained that the statute "had not intended to include *off-site* truck drivers as covered workers." *Id.* at 895-96 (emphasis added). Nothing in *Frank Bros.* holds that truck drivers are not covered by the statute for their on-site time. (The drivers in *Frank Bros.* may also have been employed by true material suppliers, and hence excluded from the Davis-Bacon Act's minimums for that reason, though the opinion is ambiguous, *see id.* at 882-83). Finally, in *H.B. Zachry Co. v. United States*, 344 F.2d 352 (Ct. Cl. 1965), the court just applied the distinction between subcontractors and material suppliers to conclude that "an independent trucking firm whose work is limited to" material delivery was a material supplier rather a subcontractor, and hence the Davis-Bacon Act did not apply to its delivery drivers, *see id.* at 117-18, 129-30.

Equally without basis was the district court's suggestion that the trucking regulation was problematic because the Davis-Bacon Act "is limited to 'construction, alteration, or repair, including painting and decorating, of public buildings and public works.'" ROA.769 (quoting 40 U.S.C. § 3142(a)). The district court misread the statute. The Davis-Bacon Act applies when there is a "*contract* . . . for construction, alteration, or repair" between a prime contractor and a federal entity (or another entity

covered by a Related Act).  40 U.S.C. § 3142(a) (emphasis added).  If that prime

contract exists, then "all mechanics and laborers employed directly on the site of the

work" get Davis-Bacon wage minimums if they are employed by a "contractor or

subcontractor" carrying out that contract.  *Id.* § 3142(c)(1).  It is thus irrelevant

whether "trucking" itself constitutes "construction, alteration, or repair," so long as

the employee doing "trucking" activities is a mechanic or laborer working on site for a

covered employer on a contract that triggers the statute.  In any event, under the plain

text of DOL's regulation, the "trucking" activities covered by the regulation are only

(1) on site work "essential or incidental to the transportation" of construction

materials and other supplies, and (2) transportation between different parts of the

construction work site (including transportation between two different locations that

each qualifies as part of the construction site).  *See* 88 Fed. Reg. at 57732; *see also id.* at

57733-34 (defining "[s]ite of the work" under DOL's regulations with reference to

where construction activities are taking place).

In short, the agency's trucking regulation was a faithful implementation of the

statute.  And that is also the more so in light of the flexibility Congress gave DOL in

its statutory grants of rulemaking powers.  *See supra* p.21-22.[8]

---

[8] As was the case with the material supplier rule, the conclusion that DOL has statutory authority to promulgate the trucking regulation suffices to answer the district court's constitutional objection.  *See supra* p.22 n.6.

2.  The district court also appeared to believe that the trucking regulation was arbitrary and capricious because it has an exception for *de minimis* onsite activities. The district court was concerned that contractors might be uncertain about whether any individual driver's on-site time exceeded this *de minimis* threshold and thought that as a result of this uncertainty contractors might instead opt to just treat all on-site time by their truck drivers as covered by the Davis-Bacon Act.  ROA.762-63.

This argument turns the arbitrary and capricious standard on its head, and certainly does not apply the required deference.  The *de minimis* exception in DOL's trucking regulation was created for the benefit of contractors, and it allows them to avoid having to comply with the Davis-Bacon Act for anything that qualifies as *de minimis*.  If a contractor is uncertain about what precisely qualifies as *de minimis* onsite activity, the contractor is always free to err on the side of caution and either not take advantage of the *de minimis* exception at all, or only take advantage of it when the contractor is confident that it applies.  But it is hardly arbitrary and capricious for the agency to have given contractors that flexibility.  And if that does count as arbitrary and capricious action, that would only suggest that the agency erred in promulgating the *de minimis* exception, not that the agency erred in promulgating the entire trucking regulation.

Nor is DOL putting contractors to a "Hobson's choice," ROA.762, as the district court mistakenly claimed.  The district court worried that if contractors erred on the side of not using the *de minimis* exception, then their labor costs would go up,

which could affect their "success on competitively bid contracts." ROA.762-63. But all bidders are bound by the same DOL rules, creating a level playing field for all contractors. The fact that some contractors might err on the side of interpreting DOL rules more conservatively than others surely does not make those rules arbitrary and capricious.

Indeed, almost every statute or regulation has some sort of residual uncertainty, and regulated entities almost always need to figure out how to apply legal standards to their conduct. There is nothing arbitrary about an agency promulgating a rule that may not provide perfect certainty about its meaning for every conceivable application. *See Kisor v. Wilkie*, 588 U.S. 558, 566 (2019) (explaining that ambiguity in regulations often "reflects the well-known limits of expression or knowledge," and it is frequently "impracticable" to use language to capture an intended point "in its every detail"). And it is especially anomalous to think this about an agency's use of a *de minimis* exception, as such exceptions are widely used in disparate areas of law. *See Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 431-32 (5th Cir. 2023) (per curiam) ("The doctrine *de minimis non curat lex* (the law does not take account of trifles) has roots that stretch to ancient soil. . . . [T]he *de minimis* canon has been part of the established background of legal principles against which all enactments are adopted . . . ." (internal quotation marks omitted)).

### C.    DOL Did Not Violate The Regulatory Flexibility Act

The district court also concluded that DOL violated the Regulatory Flexibility Act when it issued its omnibus regulatory update. This too was error, and the district court failed to apply both the text of that statute and the governing case law from this Circuit.

1. The Regulatory Flexibility Act states that when an agency "promulgates a final rule" under the APA's standard notice-and-comment rulemaking provisions, the agency ordinarily must "prepare a final regulatory flexibility analysis." 5 U.S.C. § 604(a). The statute then specifies that this analysis has to contains six different elements: (1) a statement of the need and objectives for the rule; (2) discussions about significant issues raised in public comments; (3) the agency's responses to comments from the Small Business Administration's Chief Counsel for Advocacy; (4) either a description and estimate of the number of small businesses to which the rule will apply, or an explanation for why no estimate is available; (5) specified descriptions of the rule's reporting, recordkeeping, and compliance requirements; and (6) a statement of the agency's efforts to minimize "significant economic impact on small entities consistent with the stated objectives of applicable statutes," including an explanation for why the agency rejected "other significant alternatives . . . considered by the agency" affecting small entities. *Id.*

These requirements are only "procedural" and they do not impose "a substantive agency mandate" to reach a particular outcome in the rulemaking. *Alenco*

*Comm'ns, Inc. v. FCC*, 201 F.3d 608, 625 (5th Cir. 2000). This Court has accordingly held that judicial review for compliance with the Regulatory Flexibility Act is solely "to determine whether an agency has made a 'reasonable, good-faith effort' to carry out the" Regulatory Flexibility Act's procedural mandates. *Id.*

There can be no serious dispute that DOL made a good faith effort to comply with all six of these provisions when it issued the full final rule published in the Federal Register. That final rule had an entire section devoted to Regulatory Flexibility Act compliance, *see* 88 Fed. Reg. at 57716-21, and both there and throughout the rulemaking DOL went through all six of the required factors.[9] DOL thus explained that its rulemaking was needed because there was a need to update and modernize its regulations to account for changes in contracting practices and to enhance clarity. *Id.* at 57716-17. It responded to significant issues raised in public comments throughout its discussion. *See generally id.* at 57526-57721. It repeatedly addressed the comments raised by the Small Business Administration, including by making a number of changes to the originally-proposed rule in response to those comments. *See id.* at 57557, 57616-18, 57622-23, 57639-40, 57664-70, 57717-18. It provided an estimate of the number of small businesses affected by the rulemaking, first doing an extensive analysis of various data sources to estimate that the total

---

[9] The Regulatory Flexibility Act specifically allows agencies to meet the requirements of section 604 through other analyses the agency does as part of a rulemaking, regardless of whether those analyses are expressly denominated as part of the agency's compliance with the Regulatory Flexibility Act. *See* 5 U.S.C. § 605.

number of companies affected was between 152,900 and 184,500, *see id.* at 57700-01, 57717, and then doing a further refinement with other data to conclude that the "number of potentially affected small businesses" ranged "from 101,700 to 127,800," *id.* at 57717-18. The agency noted that many of its regulatory updates within the rulemaking had nothing to do with recordkeeping (i.e. provisions about calculating prevailing wage rates) but acknowledged that other parts of the rulemaking did affect compliance, recordkeeping, and reporting requirements (e.g. provisions about payroll records and records retention). *Id.* at 57719. And the agency considered the impact that the rule had on small business, including compliance and implementation costs; revised its assessments of those costs in response to comments; considered various alternatives to reduce these costs (such as further relaxing recordkeeping requirements, and declining to finalize the rule); noted various ways that it *had* made changes from its initially proposed rule to "minimize the impact of the rule on small business"; and ultimately explained why it believed the costs from the final rule were justified by the improved enforcement efforts and other benefits. *See id.* at 57719-21; *see also id.* at 57721 (noting that the benefits from the rulemaking were "discussed throughout" the agency's Federal Register notice).

DOL also acted reasonably and in good faith in its discussion of the material supplier provision specifically. In response to comments, the agency made two changes to the definition of "material supplier" that it had originally proposed, and thus (1) clarified that merely performing certain "incidental" activities did not cause an

entity to become a contractor rather than a material supplier, and (2) declined to finalize a proposed requirement that entities supply material to the general public in order to count as a bona fide "material supplier." 88 Fed. Reg. at 57622-23. DOL also emphasized that its rule was codifying current practice, with one exception, and it cited various pieces of guidance supporting that understanding. *Id.* at 57623. The agency then acknowledged that its enforcement practices had previously allowed entities to simultaneously be both material suppliers and contractors via the 20% threshold, but explained that it was not codifying that confusing aspect of its enforcement practice because (1) it saw more predictability and statutory fealty in a bright line rule that draws clearer advance distinctions between contractors and material suppliers; and (2) the 20% enforcement threshold had led to confusion and misunderstanding that (among other things) deprived workers of wages they were entitled to. *See id.* at 57623-24; *see also id.* at 57719 (acknowledging that due to past inconsistencies in DOL's enforcement efforts regarding the material supplier exception, some small businesses that previously were not complying with Davis-Bacon standards would now have to).

DOL similarly acted reasonably and in good faith in its assessment of the truck driver provision. First, as it did with the material supplier rule, DOL modified its initial proposal to account for burdens on contractors. See 88 Fed. Reg. at 57626 (not enacting initial proposal to require compensation for certain offsite delivery time, which DOL thought "could impose unnecessary burdens on contractors for

comparatively marginal benefits"). Second, DOL explained that since its new

trucking regulation codified preexisting guidance more transparently, regulated parties

would benefit from having these policies codified and more easily understood. *See id.*

As with the material supplier provision, DOL also acknowledged that due to past

inconsistencies in enforcement and/or due to contractor misunderstandings, some

small businesses that previously had not been complying with Davis-Bacon standards

for truck drivers would now have to do so. *See id.* at 57719.

2. In nonetheless faulting the agency's analysis the district court failed to apply

the "good faith" standard required by this Court's case law, failed to apply the text of

the Regulatory Flexibility Act, and failed to accurately describe the agency's

rulemaking.

First, the district court rejected DOL's description of the new regulations as

codifying existing enforcement policy with relatively minor changes. *See* ROA.774

(describing DOL's description as "false[]."). But the district court made no effort to

discuss, or even cite, DOL's preexisting guidance documents proving the accuracy

(and certainly the good faith) of DOL's statement. *See* ROA.774. Instead, the court

thought it sufficient to rest entirely on an assertion that these rules wrought "broad

substantive changes," ROA.774, with that assertion backed solely by a citation to

testimony from two witnesses at the district court's evidentiary hearing, *see* ROA.774.

That was error thrice over. First, the court overlooked the fact that judicial

review under the Regulatory Flexibility Act is simply "to determine whether an agency

has made a 'reasonable, good-faith effort' to carry out the" statute. *Alenco Commc'ns*, 201 F.3d at 625. Evidence adduced only at a later evidentiary hearing, after a rulemaking has already been completed, cannot establish that DOL's earlier analysis was not undertaken in good faith.

Second, the district court's inquiry outside the administrative record was contrary to the Regulatory Flexibility Act. The court claimed that plaintiffs' attempt to assert a claim under the Regulatory Flexibility Act made consideration of extra-record evidence "appropriate." ROA.761. But the Regulatory Flexibility Act clearly states that judicial review under that act is conducted solely in accord with APA standards. *See* 5 U.S.C. § 611(c) ("Compliance or noncompliance by an agency with the [Regulatory Flexibility Act] shall be subject to judicial review only in accordance with this section."); *id.* § 611(a) (judicial review of compliance with the requirements of section 604 must be "in accordance with" chapter 7 of Title 5 of the U.S. Code). The APA in turn requires that review be conducted on "the whole record or those parts of it cited by a party," 5 U.S.C. § 706, a requirement that makes "the focal point for judicial review . . . the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).[10]

---

[10] Although the district court discussed exceptions to the normal record review rule, those exceptions are inapplicable. The court asserted that it could look outside the administrative record for "background information" as part of assuring that the

*Continued on next page.*

Third, even on its own terms, the testimony cited by the district court did not

meaningfully challenge DOL's reasoning. The first piece of cited testimony was from

the Chief Operating Officer of plaintiff Associated General Contractors of America.

ROA.790-91. Asked if the material supplier and trucking provisions imposed

"minor" changes, he simply asserted "[n]o," then added that he thought even very

small additional costs could matter to contractors because those costs can be the

difference between winning or losing a bid. ROA.806-07. This cursory assertion did

not materially address DOL's points about how there was relatively little change from

prior enforcement guidance—let alone show that DOL's assessment was in bad faith

(especially since DOL *acknowledged* the departure from the 20% guidance it had

---

agency had considered the relevant factors. ROA.761 (quotation marks omitted). But
this exception is extremely narrow and will only be satisfied in unusual circumstances.
*OnPath Fed. Credit Union v. U.S. Dep't of Treasury*, 734 F.4th 291, 299-300 (5th Cir.
2023); *see also Medina Cty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706-07
(5th Cir. 2010). The testimony the district court relied on here was a far cry from
necessary "background" information that was needed to ensure effective judicial
review—it was instead the opinions from some of the plaintiffs about DOL's
regulations (which could easily have been submitted as comments during the
rulemaking, in which case they would have been part of the administrative record).
The district court also claimed it could look outside the administrative record because
plaintiffs had asserted constitutional claims "outside" the APA, ROA.760, but that
logic would not apply to plaintiffs' non-constitutional claims, and the district court
was in any event mistaken because the APA (and its record-review rule) also covers
claims that an agency acted "contrary to constitutional right, power, privilege, or
immunity." 5 U.S.C. § 706(2)(B); *see also Goonsuwan v. Ashcroft*, 252 F.3d 383, 390 &
n.15 (5th Cir. 2001) (applying record review rule to constitutional claim). And while
the district court said it could look outside the administrative record to address the
non-merits preliminary injunction factors, *see* ROA.760, that would of course not
justify also looking outside the record when discussing plaintiffs' likelihood of success
on the merits.

previously used for enforcement). Nor did this testimony quantify either the number of contractors affected by DOL's change, or the number of small businesses in that category. And the testimony appears to have been based on the witness's mistaken belief that the 20% threshold in prior enforcement guidance applied to all truck drivers, *see* ROA.805-06, when in fact it had only applied to those employed by contractors simultaneously operating material supply operations. *Compare* ROA.445 *with* ROA.446-47.

The other piece of testimony the district court cited was from a contractor who opined that the material supplier rule was a "major" change because that particular contractor would no longer be treated as a material supplier on some contracts and would now have to pay higher wage rates. ROA.859, 861-63. But as already noted, DOL expressly recognized that its rule would treat solely as contractors some entities who were formerly treated (for enforcement purposes) as both material suppliers and contractors. See 88 Fed. Reg. at 57623-24, 57719. So nothing about this testimony demonstrates any falsity in DOL's analysis, let alone demonstrates that the analysis was in bad faith. And while the testifying contractor also listed some costs it experiences to "comply with [the] Davis-Bacon Act" more generally, ROA.863, none of that concerned the material supplier or trucking provisions specifically, or, indeed, any other DOL regulations (as distinguished from the statute itself).

Because DOL complied with the Regulatory Flexibility Act in assessing the extent of the changes wrought by the material supplier and trucking regulations, and

accurately described those changes, the district court also erred in claiming that DOL "failed to perform the required compliance cost analysis" associated with those changes. ROA.774-75. The entire premise of this argument was that these two regulations imposed "broad substantive changes," and as just explained that premise was both wrong and improperly based on evidence outside the administrative record.

Furthermore, the district court was mistaken in thinking that the Regulatory Flexibility Act even required DOL to perform a "compliance cost analysis" of these changes in the first place. As previously noted, the statute imposes six listed procedural requirements. 5 U.S.C. § 604(a). None of these six requires an assessment of "compliance costs." *See id.* One of the six does require "a description of the projected reporting, recordkeeping and other compliance requirements of the rule, including an estimate of the classes of small entities which will be subject to the requirement and the type of professional skills necessary for preparation of the report or record," *id.* § 604(a)(5), but that is materially different from assessing compliance "costs," and the agency complied with this requirement. Another of the six requirements is for agencies to discuss "steps the agency has taken to minimize the significant economic impact on small entities consistent with the stated objectives of applicable statutes," including a discussion for why the agency had declined to adopt other "significant alternatives to the rule," *id.* § 604(a)(6), but that also did not require DOL to specifically estimate the "compliance costs" of the material supplier and trucking rules, and the agency complied with this requirement too.

The district court further erred when it faulted DOL for supposedly "fail[ing] to even attempt to estimate the number of small entities that will be impacted by these changes." ROA.775.   As an initial matter, the court was mistaken about the record because it relied entirely on a quote from the final rulemaking on page 57717 where the agency said that it "cannot estimate the precise number of small entities that will be impacted by this change."  ROA.774 (quotation marks omitted).  But as the preceding sentence in the Federal Register makes clear, this quote was *solely* referring to a change wrought by a different rule about secondary construction sites and had nothing to do with either the material supplier or trucking rules.  *See* 88 Fed. Reg. at 57717.

The court was also mistaken about the law because nothing in the Regulatory Flexibility Act required DOL to sequentially estimate the number of entities whose practices would be changed by every single individual change wrought by DOL's omnibus rulemaking.  The statute instead required DOL only to estimate the number of small entities "to which the rule will apply."  5 U.S.C. § 604(a)(4).  Because the statute references the word "apply," rather than "impacted by these changes" (as the district court appears to have understood), DOL could meet its Regulatory Flexibility Act obligations by estimating the number of small entities who would be legally bound by DOL's rules, even if not all of the individual changes wrought by the rulemaking would require all those entities to change their practices.  And that is precisely what the agency did when it estimated the number of small entities that seek

to work on Davis-Bacon or Related Acts contracts. *See* 88 Fed. Reg. at 57718

(estimating 101,700 to 127,800 small entities affected).

In any event, even if DOL was required to estimate the number of entities

whose practices would actually be changed by "the rule," DOL in good faith assessed

that number by estimating the number of small entities affected by its entire

rulemaking—a number that would necessarily be equal to or higher than the number

affected by any individual provision. Indeed, it is hard to see how small entities could

complain that DOL was insufficiently solicitous of their interests if the agency

*over*estimated the number of small entities who would be affected. And that is

especially true in light of the fact that judicial review under the Regulatory Flexibility

Act can only be done in accord with APA standards, *see* 5 U.S.C. § 611(a), (c), which

incorporates the APA's prejudicial error rule, *see id.* § 706 ("[D]ue account shall be

taken of the rule of prejudicial error.").

Finally, the district court opined that DOL violated the Regulatory Flexibility

Act by failing to acknowledge that contractors will (1) incur unreimbursed

administrative costs when they have to retroactively create certified payroll records,

and (2) incur unreimbursed interest costs for "restitution" wages. ROA.773. Both of

these objections appear to relate solely to the implied-in-law regulation and thus

should have no relevance to the material supplier and trucking provisions (which the

district court did not tie them to, and which are not about back wages). Moreover,

these objections appear to rely on issues identified only in testimony at the evidentiary

41

hearing, rather than in any submitted comments, *see* ROA.762, 773, which is

insufficient to demonstrate bad faith for the reasons previously discussed.

3. In discussing the Regulatory Flexibility Act, the district court also suggested

that DOL's assessment of the burdens on small businesses was so unreasonable that it

rendered the challenged provisions of the rule "arbitrary and capricious" under

standard APA review. ROA.773. The court did not, however, offer any independent

analysis on this point. *See* ROA.772-74. And as previously discussed, DOL accurately

described the effects of the material supplier and trucking regulations, acknowledged

the extent to which the agency was departing from past enforcement guidance,

recognized that this could potentially impose costs on some small business, and

reasonably chose to proceed anyway.

## II.    Plaintiffs Have Failed To Demonstrate Irreparable Harm Justifying The Grant Of Preliminary Injunctive Relief

Because plaintiffs have failed to demonstrate a likelihood of success on the

merits, this Court thus can and should reverse the district court on this basis.

Underscoring this result, plaintiffs also did not show that a preliminary injunction

against the material supplier and trucking regulations would appreciably prevent any

irreparable harm to them.

For the material supplier provision, the district court concluded that those

plaintiffs who both conduct material supply activities and also serve as contractors

would be at a "competitive disadvantage[]" with respect to other contractors that do

not have their own material supply operations and would therefore obtain materials from companies that would not have to pay Davis-Bacon wages. ROA.776. But that theory would only apply to the narrow class of contractors who (1) have their own material supply operations; (2) are also doing activities that qualify them as contractors or subcontractors; and (3) were not already paying Davis-Bacon wages to their drivers for their time engaged in material supply activities on the site of the work. Only two witnesses indicated that the companies they worked for were contractors that also supplied materials. One acknowledged that his company paid its drivers wages that were substantially higher than the prevailing Davis-Bacon wages in various counties, and the witness did not identify a single location in which his company does business where Davis-Bacon wages would represent an increase in labor rates. *See* ROA.847-48. The other witness testified in conclusory fashion that his company typically paid its material supply drivers a lower amount than Davis-Bacon wages, ROA.861, 864, but he then admitted that in the one county where his company has material supply locations (Latrona County, Wyoming, *see* ROA.859), his company pays its drivers $18-$20 an hour, ROA.864-865—a figure that is *higher* than the prevailing Davis-Bacon wages in that county for a truck driver transporting materials, *see* ROA.866, 966.

Furthermore, nothing in the material supplier regulation would preclude a contractor who wished to bid on contract work covered by the Davis-Bacon Act from using another company for pure material supply rather than itself (in which case that other company would not be required to pay Davis-Bacon wages so long as it

remained a pure material supplier). In fact, it is possible that some of the organizational plaintiffs' members would be placed at a competitive *disadvantage* from the preliminary injunction if they wanted to perform work solely as a material supplier on a contract, but then lost out to an entity that wanted to perform a dual role.

For the truck driver provision, the district court repeated its concern that there was ambiguity about what constitutes *de minimis* on site time, and so the court expected that some contractors would err on the side of assuming that all driver time is paid at Davis-Bacon rates—potentially causing them to lose out to other bidders taking a less cautious approach. ROA.776-77. This injury is particularly speculative, especially since the truck-driver regulation merely codified existing guidance, which included a *de minimis* exception. *See supra* pp.7-8. Moreover, because this injury is solely caused by the *de minimis* exception, that injury would at most be grounds to enjoin just that exception (rather than the entire trucking regulation).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed as to the material supplier and trucking regulations.

Respectfully submitted,

*Of Counsel:*

SEEMA NANDA
*Solicitor of Labor*

JENNIFER S. BRAND
*Associate Solicitor*

JONATHAN T. REES
*Counsel for Contract Labor Standards*

JESSE Z. GRAUMAN
DAVID EDELI
*Senior Attorneys*
*U.S. Department of Labor*
*200 Constitution Ave., NW*
*Washington, DC 20210*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

LEIGHA SIMONTON
*United States Attorney*

MARK B. STERN
 *s/ Benjamin M. Shultz*
BENJAMIN M. SHULTZ
*Attorneys, Appellate Staff*
*Civil Division, Room 7211*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3518*
*Benjamin.Shultz@usdoj.gov*

November 2024

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.


*s/ Benjamin M. Shultz*
Benjamin M. Shultz

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11,159 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Benjamin M. Shultz*
Benjamin M. Shultz

**ADDENDUM**

# TABLE OF CONTENTS

40 U.S.C. § 3142 ...................................................................................A1

40 U.S.C. § 3145 ...................................................................................A3

Reorganization Plan No. 14 of 1950, 64 Stat. 1267 ..........................A4

29 C.F.R. § 5.2 (excerpts) ....................................................................A5

**40 U.S.C. § 3142**

**§ 3142. Rate of wages for laborers and mechanics**

(a) Application.--The advertised specifications for every contract in excess of $2,000, to which the Federal Government or the District of Columbia is a party, for construction, alteration, or repair, including painting and decorating, of public buildings and public works of the Government or the District of Columbia that are located in a State or the District of Columbia and which requires or involves the employment of mechanics or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics.

(b) Based on prevailing wage.--The minimum wages shall be based on the wages the Secretary of Labor determines to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the civil subdivision of the State in which the work is to be performed, or in the District of Columbia if the work is to be performed there.

(c) Stipulations required in contract.--Every contract based upon the specifications referred to in subsection (a) must contain stipulations that--

> (1) the contractor or subcontractor shall pay all mechanics and laborers employed directly on the site of the work, unconditionally and at least once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment, computed at wage rates not less than those stated in the advertised specifications, regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and the laborers and mechanics;

> (2) the contractor will post the scale of wages to be paid in a prominent and easily accessible place at the site of the work; and

> (3) there may be withheld from the contractor so much of accrued payments as the contracting officer considers necessary to pay to laborers and mechanics employed by the contractor or any subcontractor on the work the difference between the rates of wages required by the contract to be paid laborers and mechanics on the work and the rates of wages received by the laborers and mechanics and not refunded to the contractor or subcontractors or their agents.

(d) Discharge of obligation.--The obligation of a contractor or subcontractor to make payment in accordance with the prevailing wage determinations of the Secretary of Labor, under this subchapter and other laws incorporating this subchapter by reference, may be discharged by making payments in cash, by making contributions described in section 3141(2)(B)(i) of this title, by assuming an enforceable commitment to bear the costs of a plan or program referred to in section

3141(2)(B)(ii) of this title, or by any combination of payment, contribution, and assumption, where the aggregate of the payments, contributions, and costs is not less than the basic hourly rate of pay plus the amount referred to in section 3141(2)(B) of this title.

(e) Overtime pay.--In determining the overtime pay to which a laborer or mechanic is entitled under any federal law, the regular or basic hourly rate of pay (or other alternative rate on which premium rate of overtime compensation is computed) of the laborer or mechanic is deemed to be the rate computed under section 3141(2)(A) of this title, except that where the amount of payments, contributions, or costs incurred with respect to the laborer or mechanic exceeds the applicable prevailing wage, the regular or basic hourly rate of pay (or other alternative rate) is the amount of payments, contributions, or costs actually incurred with respect to the laborer or mechanic minus the greater of the amount of contributions or costs of the types described in section 3141(2)(B) of this title actually incurred with respect to the laborer or mechanic or the amount determined under section 3141(2)(B) of this title but not actually paid.

**40 U.S.C. § 3145**

**§ 3145. Regulations governing contractors and subcontractors**

(a) In general.--The Secretary of Labor shall prescribe reasonable regulations for contractors and subcontractors engaged in constructing, carrying out, completing, or repairing public buildings, public works, or buildings or works that at least partly are financed by a loan or grant from the Federal Government. The regulations shall include a provision that each contractor and subcontractor each week must furnish a statement on the wages paid each employee during the prior week.

(b) Application.--Section 1001 of title 18 applies to the statements.

**Reorganization Plan No. 14 of 1950, 64 Stat. 1267**

**Labor Standards Enforcement**

In order to assure coordination of administration and consistency of enforcement of the labor standards provisions of each of the following Acts by the Federal agencies responsible for the administration thereof, the Secretary of Labor shall prescribe appropriate standards, regulations, and procedures, which shall be observed by these agencies, and cause to be made by the Department of Labor such investigations, with respect to compliance with and enforcement of such labor standards, as he deems desirable, namely: (a) The Act of March 3, 1931 (46 Stat. 1494, ch. 411), as amended; (b) The Act of June 13, 1934 (48 Stat. 948, ch. 482); (c) The Act of August 1, 1892 (27 Stat. 340, ch. 352); (d) The Act of June 19, 1912 (37 Stat. 137, ch. 174), as amended; (e) The Act of June 3, 1939 (53 Stat. 804, ch. 175), as amended; (f) the Act of August 13, 1946 (60 Stat. 1040, ch. 958); (g) the Act of May 13, 1946 (60 Stat. 170, ch. 251), as amended; and (h) the Act of July 15, 1949, ch. 338, Public Law 171, 81st Congress, First Session.

**29 C.F.R. § 5.2 (excerpts)**

**§ 5.2. Definitions**

. . .

Construction, prosecution, completion, or repair. The term "construction, prosecution, completion, or repair" means the following:

(1) These terms include all types of work done—

(i) On a particular building or work at the site of the work, as defined in this section, by laborers and mechanics employed by a contractor or subcontractor, or

(ii) In the construction or development of a project under a development statute.

(2) These terms include, without limitation (except as specified in this definition):

(i) Altering, remodeling, installation (where appropriate) on the site of the work of items fabricated offsite;

(ii) Painting and decorating

(iii) Manufacturing or furnishing of materials, articles, supplies or equipment, but only if such work is done by laborers or mechanics

(A) Employed by a contractor or subcontractor, as defined in this section, on the site of the work, as defined in this section, or

(B) In the construction or development of a project under a development statute;

(iv) "Covered transportation," defined as any of the following activities:

(A) Transportation that takes place entirely within a location meeting the definition of "site of the work" in this section;

(B) Transportation of one or more "significant portion(s)" of the building or work between a "secondary construction site" as defined in this section and a "primary construction site" as defined in this section;

(C) Transportation between an "adjacent or virtually adjacent dedicated support site" as defined in this section and a "primary construction site" or "secondary construction site" as defined in this section;

(D) "Onsite activities essential or incidental to offsite transportation," defined as activities conducted by a truck driver or truck driver's assistant on the site

of the work that are essential or incidental to the transportation of materials or supplies to or from the site of the work, such as loading, unloading, or waiting for materials to be loaded or unloaded, but only where the driver or driver's assistant's time spent on the site of the work is not de minimis; and

(E) Any transportation and related activities, whether on or off the site of the work, by laborers and mechanics employed in the construction or development of the project under a development statute.

(v) Demolition and/or removal, under any of the following circumstances:

(A) Where the demolition and/or removal activities themselves constitute construction, alteration, and/or repair of an existing building or work. Examples of such activities include the removal of asbestos, paint, components, systems, or parts from a facility that will not be demolished; as well as contracts for hazardous waste removal, land recycling, or reclamation that involve substantial earth moving, removal of contaminated soil, re-contouring surfaces, and/or habitat restoration.

(B) Where subsequent construction covered in whole or in part by the labor standards in this part is contemplated at the site of the demolition or removal, either as part of the same contract or as part of a future contract. In determining whether covered construction is contemplated within the meaning of this provision, relevant factors include, but are not limited to, the existence of engineering or architectural plans or surveys of the site; the allocation of, or an application for, Federal funds; contract negotiations or bid solicitations; the stated intent of the relevant government officials; and the disposition of the site after demolition.

(C) Where otherwise required by statute.

(3) Except for transportation that constitutes "covered transportation" as defined in this section, construction, prosecution, completion, or repair does not include the transportation of materials or supplies to or from the site of the work.

Contract. The term "contract" means any prime contract which is subject wholly or in part to the labor standards provisions of any of the laws referenced by § 5.1 and any subcontract of any tier thereunder, let under the prime contract. With the exception of work performed under a development statute, the terms contract and subcontract do not include agreements with employers that meet the definition of a material supplier under this section.

. . .

Contractor. The term "contractor" means any individual or other legal entity that enters into or is awarded a contract that is subject wholly or in part to the labor

standards provisions of any of the laws referenced by § 5.1, including any prime contract or subcontract of any tier under a covered prime contract. In addition, the term contractor includes any surety that is completing performance for a defaulted contractor pursuant to a performance bond. The U.S. Government, its agencies, and instrumentalities are not contractors, subcontractors, employers or joint employers for purposes of the labor standards provisions of any of the laws referenced by § 5.1. A State or local government is not regarded as a contractor or subcontractor under statutes providing loans, grants, or other Federal assistance in situations where construction is performed by its own employees. However, under development statutes or other statutes requiring payment of prevailing wages to all laborers and mechanics employed on the assisted project, such as the U.S. Housing Act of 1937, State and local recipients of Federal-aid must pay these workers according to Davis–Bacon labor standards. The term "contractor" does not include an entity that is a material supplier, except if the entity is performing work under a development statute.

. . .

Development statute. The term "development statute" includes the United States Housing Act of 1937; the Housing Act of 1949; and the Native American Housing Assistance and Self–Determination Act of 1996, and any other Davis–Bacon Related Act that requires payment of prevailing wages under the Davis–Bacon labor standards to all laborers and mechanics employed in the development of a project and for which the Administrator determines that the statute's language and/or legislative history reflected clear congressional intent to apply a coverage standard different from the Davis–Bacon Act itself.

. . .

Laborer or mechanic. The term "laborer or mechanic" includes at least those workers whose duties are manual or physical in nature (including those workers who use tools or who are performing the work of a trade), as distinguished from mental or managerial. The term "laborer" or "mechanic" includes apprentices, helpers, and, in the case of contracts subject to the Contract Work Hours and Safety Standards Act, watchpersons or guards. The term does not apply to workers whose duties are primarily administrative, executive, or clerical, rather than manual. Persons employed in a bona fide executive, administrative, or professional capacity as defined in 29 CFR part 541 are not deemed to be laborers or mechanics. Forepersons who devote more than 20 percent of their time during a workweek to mechanic or laborer duties, and who do not meet the criteria of part 541, are laborers and mechanics for the time so spent.

Material supplier. The term "material supplier" is defined as follows:

(1) A material supplier is an entity meeting all of the following criteria:

(i) Its only obligations for work on the contract or project are the delivery of materials, articles, supplies, or equipment, which may include pickup of the same in addition to, but not exclusive of, delivery, and which may also include activities incidental to such delivery and pickup, such as loading, unloading, or waiting for materials to be loaded or unloaded; and

(ii) Its facility or facilities that manufactures the materials, articles, supplies, or equipment used for the contract or project:

    (A) Is not located on, or does not itself constitute, the project or contract's primary construction site or secondary construction site as defined in this section; and

    (B) Either was established before opening of bids on the contract or project, or is not dedicated exclusively, or nearly so, to the performance of the contract or project.

(2) If an entity, in addition to being engaged in the activities specified in paragraph (1)(i) of this definition, also engages in other construction, prosecution, completion, or repair work at the site of the work, it is not a material supplier.

. . .

Site of the work. The term "site of the work" is defined as follows:

(1) "Site of the work" includes all of the following:

    (i) The primary construction site(s), defined as the physical place or places where the building or work called for in the contract will remain.

    (ii) Any secondary construction site(s), defined as any other site(s) where a significant portion of the building or work is constructed, provided that such construction is for specific use in that building or work and does not simply reflect the manufacture or construction of a product made available to the general public, and provided further that the site is either established specifically for the performance of the contract or project, or is dedicated exclusively, or nearly so, to the performance of the contract or project for a specific period of time. A "significant portion" of a building or work means one or more entire portion(s) or module(s) of the building or work, such as a completed room or structure, with minimal construction work remaining other than the installation and/or final assembly of the portions or modules at the place where the building or work will remain. A "significant portion" does not include materials or prefabricated component parts such as prefabricated housing components. A "specific period of time" means a period of weeks, months, or more, and does not include circumstances where a site at which

multiple projects are in progress is shifted exclusively or nearly so to a single project for a few hours or days in order to meet a deadline.

(iii) Any adjacent or virtually adjacent dedicated support sites, defined as:

(A) Job headquarters, tool yards, batch plants, borrow pits, and similar facilities of a contractor or subcontractor that are dedicated exclusively, or nearly so, to performance of the contract or project, and adjacent or virtually adjacent to either a primary construction site or a secondary construction site, and

(B) Locations adjacent or virtually adjacent to a primary construction site at which workers perform activities associated with directing vehicular or pedestrian traffic around or away from the primary construction site.

(2) With the exception of locations that are on, or that themselves constitute, primary or secondary construction sites as defined in paragraphs (1)(i) and (ii) of this definition, site of the work does not include:

(i) Permanent home offices, branch plant establishments, fabrication plants, tool yards, etc., of a contractor or subcontractor whose location and continuance in operation are determined wholly without regard to a particular Federal or federally assisted contract or project; or

(ii) Fabrication plants, batch plants, borrow pits, job headquarters, tool yards, etc., of a material supplier, which are established by a material supplier for the project before opening of bids and not on the primary construction site or a secondary construction site, even where the operations for a period of time may be dedicated exclusively, or nearly so, to the performance of a contract.

Subcontractor. The term "subcontractor" means any contractor that agrees to perform or be responsible for the performance of any part of a contract that is subject wholly or in part to the labor standards provisions of any of the laws referenced in § 5.1. The term subcontractor includes subcontractors of any tier.

. . .