[ORAL ARGUMENT NOT SCHEDULED]

## No. 24-10790

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

**ASSOCIATED GENERAL CONTRACTORS OF AMERICA; ASSOCIATED GENERAL CONTRACTORS OF TEXAS; LUBBOCK CHAMBER OF COMMERCE; J. LEE MILLIGAN, INCORPORATED,**

*Plaintiffs-Appellees,*

v.

**UNITED STATES DEPARTMENT OF LABOR; JULIE SU, in her official capacity as Acting United States Secretary of Labor,**

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Northern District of Texas
Case No. 5:23-CV-0272-C

---

# BRIEF OF AMICUS CURIAE NORTH AMERICA'S BUILDING TRADES UNIONS IN SUPPORT OF DEFENDANTS-APPELLANTS AND REVERSAL

---

Esmeralda Aguilar
Sherman Dunn, P.C.
900 Seventh Street, N.W., Suite 1000
Washington, D.C. 20001
202-785-9300
aguilar@shermandunn.com

December 4, 2024

## CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel of record certifies that North America's Building Trades Unions is an unincorporated membership association that has no parent corporation and in which no corporate entity has any ownership interest.

Pursuant to Fifth Circuit Rule 29.2, the undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Person or Entity | Connection to Case |
|---|---|
| North America's Build Trades Unions | Amicus curiae |
| Sherman Dunn, P.C. | Counsel to amicus |
| Esmeralda Aguilar | Counsel to amicus |
| Gwen Byrne | Counsel to amicus |

Dated: December 4, 2024

/s/ Esmeralda Aguilar
Esmeralda Aguilar

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION AND STATEMENT OF INTEREST ....................................... 1

ARGUMENT ....................................................................................... 5

    I.    Appellees are unlikely to succeed on the merits of their claim. ..................... 5

        A. DOL's interpretation that truck drivers and certain transportation activities are covered under the DBRA for onsite work is not new, is consistent with the Act, and Congress has not changed it when it has expanded the DBRA……………………………………..……………... 5

        B. The District Court's reliance on *Midway* is unavailing because that decision did not hold that truck drivers are excluded from the DBRA's coverage, or that onsite activities performed by truck drivers fall outside the scope of the DBRA. ....................................................................... 11

        C. DOL's material supplier provision is consistent with case law and the plain text of the Davis-Bacon Act.......................................................... 13

    II.    Appellees have not established irreparable harm........................................ 18

        A. AGC failed to satisfy the "irreparable injury" prong of the preliminary injunction test............................................................................ 18

CONCLUSION .................................................................................. 21

CERTIFICATE OF COMPLIANCE ...................................................... 22

CERTIFICATE OF SERVICE ............................................................. 23

# TABLE OF AUTHORITIES

## CASES:

*ADT, LLC v. Capital Connect, Inc.*,
   145 F. Supp. 3d 671 (N.D. Tex. 2015) ..............................................18

*Aetna Casualty & Surety Co. v. United States*,
   382 F.2d 615 (5th Cir. 1967) .............................................................15

*Am. Sur. Co. of N.Y. v. United States ex rel. Barro-Agree Lab'ys*,
   76 F.2d 67 (5th Cir. 1935) ................................................................16

*American Bldgs. Co. v. Wheelers Stores*,
   585 P.2d 845 (Wyo. 1978) ................................................................17

*Apple, Inc., v. Samsung Elecs. Co.*,
   678 F.3d 1314 (Fed. Cir. 2012) .......................................................20

*Ball, Ball & Brosamer, Inc. v. Reich*,
   24 F.3d 1447 (D.C. Cir. 1994).........................................................13

*Building & Constr. Trades Dep't v. Donovan*,
   712 F.2d 611 (D.C. Cir. 1983)........................................................... 4

*Building & Constr. Trades Dep't v. Martin*,
   961 F.2d 269 (D.C. Cir. 1992)........................................................... 4

*Building & Constr. Trades Dep't v. U.S. Dep't of Labor Wage Appeals Board*,
   829 F.2d 1186 (D.C. Cir. 1987)......................................................... 4

*Building and Construction Trades Department, AFL-CIO v. Department of Labor, Wage Appeals Board*,
   932 F.2d 985 (D.C. Cir. 1991) ...................................................11, 12

*CFTC v. Schor*,
   478 U.S. 833 (1986) ......................................................................... 9

*Clifford F. MacEvoy Co. v. United States*,
   322 U.S. 102 (1944) .......................................................................14

*Crossover Mkt. LLC v. Newell*,
  No. A-21-CV-00640-JRN, 2022 U.S. Dist. LEXIS 99921
  (W.D. Tex. Jan. 12, 2022) ....................................................................19

*District of Columbia v. DOL*,
  819 F.3d 444 (D.C. Cir. 2016)..............................................................15

*Doyle v. Missouri Valley Constructors, Inc.*,
  288 F. Supp. 121 (D. Co. 1968) ...........................................................14

*E.T. Simonds Constr. Co.*,
  ALJ No. 2021–DBA–00001 (May 25, 2021), 2022 DOL Ad. Rev. Bd. LEXIS
  25, *aff'd*, ARB No. 21–054 (May 13, 2022) .................................6, 19

*Goldstein v. Acme Concrete Corp.*,
  103 So. 2d 202 (Fla. 1958) ...................................................................14

*H.B. Zachry Co. v. United States*,
  170 Ct. Cl. 115 (1965) ..........................................................................15

*Holland Am. Ins. Co. v. Succession of Roy*,
  777 F.2d 992 (5th Cir. 1985)................................................................18

*Humana, Inc. v. Jacobson*,
  804 F.2d 1390 (5th Cir. 1987) .............................................................18

*John R. Hess, Inc. v. Brecksville Asphalt Paving Co.*,
  No. 43430, 1981 Ohio App. LEXIS 10521 (Ohio App. Ct. Nov. 5, 1981)..........17

*L.P. Cavett Co. v. United States Dep't of Lab.*,
  101 F.3d 1111 (6th Cir. 1996) .............................................................13

*Luhr Bros., Inc. v. Shepp*,
  157 F.3d 333 (5th Cir. 1988)................................................................. 3

*Massimo Motor Sports LLC v. Shandong Odes Indus. Co.*,
  No. 21-CV-02180-X, 2021 U.S. Dist. LEXIS 246404
  (N.D. Tex. Dec. 28, 2021).....................................................................18

*Nabors Drilling Techs. USA v. Helmerich & Payne Int'l Drilling*,
  No. 3:20-cv-03126-M, 2022 U.S. Dist. LEXIS 29431 (N.D. Tex. Feb. 18, 2022)
  ........................................................................................................................20

*Nat'l Lead Co. v. United States*,
  252 U.S. 140 (1920) .....................................................................................11

*Peterson v. Freiermuth*,
  17 Cal. App. 609 (1911).............................................................................17

*Rest. Law Center v. United States Dep't of Lab.*,
  66 F.4th 593 (5th Cir. 2023).................................................................19, 20

*TNT Crane & Rigging, Inc. v. OSHRC*,
  74 F.4th 347 (5th Cir. 2023)......................................................................... 8

*United States use of Pool Constr. Co. v. Smith Road Constr. Co.*,
  227 F. Supp. 315 (N.D. Okla. 1964) .........................................................16

*Unites States v. Binghamton Constr. Co.*,
  347 U.S. 171 (1954) ....................................................................................18

*Univs. Research Ass'n, Inc. v. Coutu*,
  450 U.S. 754 (1981) ..................................................................................... 1

*Wy. Outdoor Council v. U.S. Forest Serv.*,
  165 F.3d 43 (D.C. Cir. 1999) ....................................................................... 8

**STATUTES:**

12 U.S.C. § 1701q(j)(5) ......................................................................................10

23 U.S.C. § 113(a) (1958)..................................................................................... 9

25 U.S.C § 5389(g)..............................................................................................11

25 U.S.C. § 5307...................................................................................................11

29 U.S.C. § 3142(c) ............................................................................................. 7

40 U.S.C. § 3142...................................................................................1, 2, 12

40 U.S.C. § 3142(c) ..................................................................................7, 16

42 U.S.C. § 1437j(a) ....................................................................................10

42 U.S.C. § 5310 ..........................................................................................10

49 U.S.C. § 5333(a) (1994) .......................................................................... 9

I.R.C. § 45(b)(7)(A) & (B) ..........................................................................10

I.R.C. § 48(a)(10)(A) & (B) .........................................................................10

Pub. L. No. 117-169......................................................................................10

Pub. L. No. 74-403, 49 Stat. 1011 (1935).................................................... 9

Pub. L. No. 88-349, § 1, 78 Stat. 238 (1964)............................................... 9

## CODE OF FEDERAL REGULATIONS:

29 C.F.R. § 5.1 ............................................................................................. 2

29 C.F.R. § 5.2 ............................................................................................. 7

29 C.F.R. § 5.2(2) ........................................................................................14

29 C.F.R. § 5.2(iv)(D)................................................................................... 5

29 C.F.R. § 5.2(j) (1983) .............................................................................12

29 C.F.R. § 5.5(e)......................................................................................... 3

29 C.F.R. §5.2(l)(1)...................................................................................... 6

29 C.F.R. pts 1, 3, 5 & 7.............................................................................. 2

**FEDERAL REGISTER NOTICES:**

48 Fed. Reg. 19,540 (Apr. 29, 1983) ...................................................6, 16

57 Fed. Reg. 19063 (May 4, 1992) ........................................................ 6

6 Fed. Reg. 1,207 (Mar. 1, 1941) ........................................................6, 9

8 Fed. Reg. 13,781 (Oct. 8, 1943) ......................................................... 6

88 Fed. Reg. 57,526 (Aug. 23, 2023) ...........................................2, 8, 16

**OTHER AUTHORITIES:**

74 Cong. Rec. 6,510 (daily ed. Feb. 28, 1931) .................................1, 18

AAM 10 (Sept. 26, 1958) ..................................................................... 6

AAM 36 (Mar. 16, 1962) ...................................................................... 9

AAM 5 (Dec. 26, 1957) .......................................................................15

DOL Field Operations Handbook, Ch. 15: Davis-Bacon and Related Acts
(rev. Mar. 24, 2016) ...................................................................2, 5, 20

DOL, Conducting Surveys for Davis-Bacon Construction Wage Determinations:
Resource Book (Mar. 1989) ................................................................. 6

DOL, Davis-Bacon Construction Wage Determination Manual of Operations
(Apr. 1986) ......................................................................................... 6

DOL, Prevailing Wage Resource Book, Davis-Bacon Surveys
(rev. Apr. 1, 2024) ............................................................................... 6

Hearings on H.R. 16619 Before the H. Comm. on Labor, 71st Cong.
(Jan. 31, 1931) ...................................................................................18

Reorganization Plan No. 14 of 1950 ..................................................... 1

**INTRODUCTION AND STATEMENT OF INTEREST**

The Davis-Bacon Act of 1931 is a minimum wage law that requires "contractors and subcontractors" on federal construction projects to pay "laborers and mechanics" no less than the local prevailing wage rate. 40 U.S.C. § 3142. Congress enacted the Davis-Bacon Act out of concern that aggressive bidding in public procurement was producing a race to the bottom in local area wages and benefits. *See, e.g.*, *Univs. Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 774-75 (1981). During the Act's floor debate, the bill's sponsor, Republican Congressman Robert Bacon, emphasized that "[t]he Government . . . must not be put in the position of helping to demoralize the local labor market." 74 Cong. Rec. 6,510 (daily ed. Feb. 28, 1931).

Since the Act's passage, Congress has enacted over 90 laws extending the Act's prevailing wage requirements to projects that receive various forms of federal assistance, including grants, loans, guarantees, insurance, bonds, tax credits, and other innovative financing methods. These laws are known as "Related Acts," and the Act and Related Acts will together be referred to as the "DBRA."

The U.S. Department of Labor ("DOL") is responsible for coordinating the administration and enforcement of the DBRA and providing administrative oversight to all federal contracting agencies with respect to prevailing wage requirements. *See* Reorganization Plan No. 14 of 1950, *reprinted in* 5 U.S.C. App.

1

at p. 126; 29 C.F.R. § 5.1; 40 U.S.C. § 3142.  Pursuant to that authority, DOL has promulgated detailed regulations and guidance.  *See, e.g.*, 29 C.F.R. pts 1, 3, 5 & 7; DOL Prevailing Wage Resource Book (rev. Apr. 1, 2024), *available at* https://www.dol.gov/agencies/whd/government-contracts/prevailing-wage-resource-book; DOL Field Operations Handbook, Ch. 15: Davis-Bacon and Related Acts (rev. Mar. 24, 2016) ("FOH"), *available at* https://www.dol.gov/agencies/whd/field-operations-handbook;[1] All Agency Memoranda ("AAM") (over 200 AAMs available at sam.gov).

On August 23, 2023, after a notice and comment period, DOL promulgated updates to the DBRA's regulatory framework, effective October 23, 2023.  *Updating the Davis-Bacon and Related Acts Regulations*, 88 Fed. Reg. 57,526 (Aug. 23, 2023) ("Rule"). The Associated General Contractors of America, Associated General Contractors of Texas, Lubbock Chamber of Commerce, and J. Lee Milligan, Inc. (collectively, "AGC" or "Appellees") filed suit on November 7, 2023, with the U.S. District Court for the Northern District of Texas ("District Court") challenging various aspects of the Rule.  On March 26, 2024 – seven months after the Rule was announced and five months after it went into effect – AGC filed a motion to preliminarily enjoin three specific provisions of the Rule:  the operation-of-law

---

[1]     A previous version of the Prevailing Wage Resource Book was published in 2015, and a previous version of the FOH was published in 2010.

provision, 29 C.F.R. § 5.5(e); truck driver provision, *id*. § 5.2 (subsection (iv)(D) under the definition for "construction, prosecution, completion, or repair"); and material supplier provision, *id*. § 5.2 (subsection (2) under the definition for "material supplier"). The District Court granted AGC's motion and preliminarily enjoined DOL from enforcing the three challenged provisions on a nationwide basis. In doing so, the District Court adopted AGC's proposed findings of fact and conclusions of law verbatim, with the exception of one sentence concerning pretrial deadlines. Compare ROA. 702-41 with ROA, 742-81. "The practice of 'rubber-stamping' findings has been routinely discouraged." *Luhr Bros., Inc. v. Shepp*, 157 F.3d 333, 338 n. 4 (5th Cir. 1988). When a district court does so, the Fifth Circuit has held that it "should approach such findings with caution." *Id.* at 338 (cleaned up). DOL appealed the District Court's order with respect to the truck driver and material supplier provisions.

North America's Building Trades Unions ("NABTU") is a labor organization composed of fourteen national and international unions that together represent over three million men and women in the construction industry. The men and women represented by NABTU's affiliates routinely work on projects covered by the DBRA. NABTU and its affiliated unions strive to maintain a decent standard of living for construction workers and their families, and NABTU has been a regular participant in litigation concerning the administration of the DBRA. *See e.g.,*

3

*Building & Constr. Trades Dep't v. Donovan*, 712 F.2d 611 (D.C. Cir. 1983); *Building & Constr. Trades Dep't v. U.S. Dep't of Labor Wage Appeals Board*, 829 F.2d 1186 (D.C. Cir. 1987); *Building & Constr. Trades Dep't v. Martin*, 961 F.2d 269 (D.C. Cir. 1992).[2]

NABTU, therefore, has a strong interest in this case, and it files this brief under Federal Rule of Appellate Procedure 29(a)(2).  All parties have consented to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), NABTU and its counsel declare that:  (1)  no counsel for any party authored any part of this brief; (2) no party or party's counsel contributed money that was intended to fund the preparation or filing of this brief; and (3) no person other than NABTU, its affiliates, and their counsel has contributed money to fund the preparation or submission of this brief.

---

[2]    NABTU is authorized to do business as North America's Building Trades Unions, but is organized as the Building and Construction Trades Department of the AFL-CIO.

4

# ARGUMENT

## I.    Appellees are unlikely to succeed on the merits of their claim.

### A. DOL's interpretation that truck drivers and certain transportation activities are covered under the DBRA for onsite work is not new, is consistent with the Act, and Congress has not changed it when it has expanded the DBRA.

The District Court erred in finding that the Rule's reference to truck drivers and transportation activities constitutes a "fundamental change" to the implementation of the Act.  ROA.769.  The Rule's truck driver provision is not a change, but rather is wholly consistent with decades of DOL guidance.

The truck driver provision is set forth in 29 C.F.R. § 5.2(iv)(D) concerning covered transportation, and states that onsite "activities conducted by a truck driver or truck driver's assistant on the site of the work . . . such as loading, unloading or waiting for materials to be loaded or unloaded" are covered by the DBRA, "but only where the driver or driver's assistant's time spent on the site of the work is not *de minimis*." ROA.779-80.

The truck driver provision codifies DOL's longstanding guidance requiring contractors to pay DBRA wages to truck drivers and their assistants for onsite activities such as loading and unloading materials and supplies at the site of the work, where time so spent on the site of the work is not "*de minimis*." *See, e.g.*, DOL, FOH, Ch. 15, Sec. 15e22(a)(2); *E.T. Simonds Constr. Co.*, ALJ No. 2021–DBA–00001

(May 25, 2021), 2022 DOL Ad. Rev. Bd. LEXIS 25, *aff'd*, ARB No. 21–054 (May 13, 2022).

Since 1941, DOL has – in one form or another – treated truck drivers and transportation activities as covered under the DBRA.  6 Fed. Reg. 1,207, 1,211 (Mar. 1, 1941); 8 Fed. Reg. 13,781, 13,796 (Oct. 8, 1943); 48 Fed. Reg. 19,540, 19,543 (Apr. 29, 1983); *see also* AAM 10, at 3 (Sept. 26, 1958) (there is "no doubt that truck drivers fall within the meaning" of the term "laborers and mechanics").[3]  For this reason, DOL has long treated truck drivers as a "key classification" for purposes of conducting DBRA wage surveys and establishing prevailing wage rates*. See, e.g.*, DOL, Prevailing Wage Resource Book, Davis-Bacon Surveys (rev. Apr. 1, 2024); DOL, Conducting Surveys for Davis-Bacon Construction Wage Determinations: Resource Book, at 52-53 (Mar. 1989); DOL, Davis-Bacon Construction Wage Determination Manual of Operations, at 100 & 106 (Apr. 1986).

The DOL's longstanding interpretation that truck drivers are covered by the DBRA is wholly consistent with the statutory language.  The DBRA applies to "all mechanics and laborers employed directly on the site of the work . . .."  40 U.S.C. §

---

[3]    In the 1990s, in response to the *Midway* decision discussed below, DOL revised its DBRA regulations by narrowing the geographic scope of covered offsite transportation. That revision, however, did *not* exclude all offsite transportation or the truck driver occupation from coverage. *See, e.g.*, 57 Fed. Reg. 19063, 19,204-06 (May 4, 1992) (preserving 29 C.F.R. §5.2(l)(1) and (2), which covers transportation activities related to certain nearby secondary sites).

3142(c). The District Court, however, found that "truck drivers are not de facto 'mechanics and laborers employed directly on the site of the work." ROA.769.

The DBRA does not define the terms "laborers" or "mechanics," but as the DOL explained in its opening brief, longstanding DOL regulations that are not challenged here define "laborer or mechanic" as a worker "whose duties are manual or physical in nature (including those workers who use tools or who are performing the work of a trade), as distinguished from mental or managerial." 29 C.F.R. § 5.2. That unchallenged regulation is consistent with any common-sense meaning of the term laborer or mechanic. (*See* DOL Opening Brief at 24-25).

The truck driver provision simply provides that when a certain classification of laborer – truck drivers and their assistants – are employed both off site and directly on the site of the work, their employment is covered by the DBRA during the time that they are employed on the site of the work. That is exactly what the DBRA requires because it applies to "***all*** mechanics and laborers employed directly on the site of the work . . .." 29 U.S.C. § 3142(c) (emphasis added).

The District Court nevertheless found the trucking provision arbitrary and capricious because, according to the District Court, it places contractors in a Hobson's choice of treating all time on-site as covered by the DBRA, or ascertaining whether the time spent on-site by truck drivers exceeds a *de minimis* amount of time. ROA.762. But that alleged Hobson's choice is a function of the statute, which only

applies when a mechanic or laborer is employed on the site of the work. The DOL could have, consistent with the DBRA, provided that any time spent on site by truck drivers and their assistants is covered by the DBRA. The Rule's amnesty for *de minimis* periods of time spent on site by truck drivers and their assistants on site does not make the Rule arbitrary and capricious. The District Court's conclusion that the term "de minimis" is too uncertain ignores the guidance in the preamble, explaining that DOL's standard is not as stringent as the de minimis standard under the Fair Labor Standards Act and excludes workers who are onsite for only a few minutes. 88 Fed. Reg. at 57,626. The preamble also provides an example of time that will exceed the de minimis standard (e.g. where a driver spends 15 minutes per hour on the job site or 25 percent of their workday). *Id*. Just as the courts rely on preambles for clarity, so can the regulated community. *See, e.g.*, *TNT Crane & Rigging, Inc. v. OSHRC*, 74 F.4th 347, 356 (5th Cir. 2023) (looking to preamble of final rule on crane and derricks for guidance on meaning of "disassembly"); *Wy. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999) (A regulation's preamble can be used as "evidence of an agency's contemporaneous understanding of its proposed rules.").

Not only is the truck driver provision consistent with DOL's long-standing interpretation of the DBRA and wholly consistent with the statute, but after the DOL has interpreted "laborers and mechanics" to include truck drivers, Congress has

amended and extended the DBRA on numerous occasions without any attempt to limit the scope of the statutory phrase "laborers and mechanics," or the regulations promulgated thereunder. Pub. L. No. 74-403, 49 Stat. 1011 (1935); Pub. L. No. 88-349, § 1, 78 Stat. 238 (1964); *see also* 23 U.S.C. § 113(a) (1958); 49 U.S.C. § 5333(a) (1994); 42 U.S.C. § 17282(b)(3)(A) (2007). As explained above, Congress has passed over 90 Related Acts and instead of amending the phrase "laborers and mechanics" to exclude truck drivers, Congress has chosen to keep DOL's interpretation intact.

"It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is one intended by Congress." *CFTC v. Schor*, 478 U.S. 833, 846 (1986) (internal quotation omitted). Here, Congress enacted the Davis-Bacon Act and the statutory text at issue in 1931. DOL promulgated regulations covering transportation activities in 1941. 6 Fed. Reg. at 1,211. In the 1950s and 60s, DOL issued a series of AAMs reaffirming that the terms "laborers and mechanics" include truck drivers where all other DBRA conditions for coverage are met. *See, e.g.*, AAM 10, at 3; AAM 36 (Mar. 16, 1962). In 1964, Congress amended the Act by expanding the concept of prevailing wage to include a fringe benefit component. Pub. L. No. 88-349 § 1. By amending the prevailing wage

provision and preserving the phrase describing the intended beneficiaries – "laborers and mechanics" – Congress signaled its approval of DOL's longstanding interpretation that truck drivers are included in that phrase.

Further evidence of congressional ratification can be found in the Davis-Bacon provisions included in twelve tax credit programs for clean energy projects under the Inflation Reduction Act of 2022, Pub. L. No. 117-169 (codified in various sections of Title 26 of the U.S. Code). Those provisions preserve the term "laborers and mechanics" and impose penalties on project owners who claim bonus credits for Davis-Bacon compliance and fail to ensure that laborers and mechanics on their project are, in fact, receiving the proper prevailing wage. *See, e.g.*, I.R.C. § 48(a)(10)(A) & (B); I.R.C. § 45(b)(7)(A) & (B).

What's more, Congress knows how to restrict – and expand – the scope of the DBRA when it wants to do so. For example, the Related Act in the Housing Act of 1959 narrows the scope of Davis-Bacon application to those federally assisted housing projects with 12 or more units. 12 U.S.C. § 1701q(j)(5); *see also* 42 U.S.C. § 1437j(a) (limiting scope of DBRA to assisted housing projects with 9 or more units); 42 U.S.C. § 5310 (limiting scope of DBRA to assisted housing projects with 8 or more units). The Related Act in the Indian Self-Determination and Education Assistance Act exempts certain tribes and tribal organizations from Davis-Bacon

compliance on federally assisted projects. 25 U.S.C § 5389(g); *see also* 25 U.S.C. § 5307 (same).

Thus, had Congress disapproved of DOL's treatment of truck drivers as "laborers and mechanics," it would have narrowed the scope of that term in subsequent legislation. After all, "Congress is presumed to have legislated with knowledge of such an established [regulation] of an executive department of the Government." *Nat'l Lead Co. v. United States*, 252 U.S. 140, 147 (1920) (referring to 24-year-old agency regulation).

By not disturbing the statutory phrase "laborers and mechanics" in subsequent amendments to the DBA and Related Acts, and enacting legislation promoting compliance through penalties, Congress signaled its approval of DOL's interpretation concerning truck drivers.

## B. The District Court's reliance on *Midway* is unavailing because that decision did not hold that truck drivers are excluded from the DBRA's coverage, or that onsite activities performed by truck drivers fall outside the scope of the DBRA.

The District Court held that the truck driver provision applying the DBRA to certain "onsite activities," such as loading and unloading materials, constitutes an impermissible "expansion" of the DBRA that is inconsistent with case law interpreting the application of the DBRA. ROA.770. In support of its holding, the District Court relied heavily on *Building and Construction Trades Department, AFL-CIO v. Department of Labor, Wage Appeals Board*, 932 F.2d 985 (D.C. Cir. 1991)

11

(hereafter, "*Midway*").  That decision, however, did not address whether a truck driver's "*onsite*" activities are covered under the DBRA.  Instead, *Midway* focused on the time spent transporting materials between the site of construction and the material supplier's off-site facility.

In *Midway*, the issue was whether material delivery truck drivers that spent 90 percent of their workday on the highway driving 50-mile round trips between a DBRA-covered jobsite and a commercial supplier's off-site facility were entitled to prevailing wages during the entire time of their work. 932 F.2d at 988.  In that case, the prime contractor challenged a broad DOL regulation applying the DBRA to the transportation of materials *to and from* a commercial supplier's location, without regard to the supplier's proximity to the primary site of construction.  29 C.F.R. § 5.2(j) (1983) (including in the definition of "construction" the "transporting of materials and supplies *to or from* the [covered] building or work" by the employees of the contractor or subcontractor) (emphasis added).

The D.C. Circuit in *Midway* held that the truck drivers' 50-mile trips were not covered by the Act, because the Act applies only to those "employed directly on the site of the work." 932 F.2d at 990 (quoting 40 U.S.C. § 3142).  The *Midway* decision, therefore, did not address the question whether truck drivers' activities that take place directly on the site of the work, such as the loading and unloading of materials and supplies, are covered by the DBRA.

12

The District Court's citation to *Ball, Ball & Brosamer, Inc. v. Reich*, 24 F.3d 1447, 1452 (D.C. Cir. 1994), is equally unpersuasive because that decision also does not address activities performed directly on the site of the work.  The D.C. Circuit's decision in that case held only that the support facility at issue – a borrow pit and batch plant two miles away – was not located in proximity to the primary site of construction, and did not constitute part of the site of the work.  Similarly, in *L.P. Cavett Co. v. United States Dep't of Lab.*, 10l F.3d 1111, 1113 (6th Cir. 1996), the issue was whether work performed hauling materials between the construction site and a batch plant over three miles from the construction site, could be considered work performed "directly on the site of the work" for purposes of DBRA coverage.

The Rule's truck driver provision does not seek to expand the site of the work beyond the covered construction site, and merely directs the payment of prevailing wages to workers performing duties on that site, which are manual or physical in nature –*i.e.*, duties of a "laborer or mechanic."  By doing so, the provision is entirely consistent with the statutory text, DOL's consistent regulatory guidance, and the case law applying the DBRA to truck drivers.

## C. DOL's material supplier provision is consistent with case law and the plain text of the Davis-Bacon Act.

The new Rule modified the definitions of "contractor" and "material supplier" by including language reflecting the long-held interpretation that bona fide material supply companies are generally not considered to be contractors and are therefore

exempt from the Act's coverage. In 29 C.F.R. § 5.2(2), the Rule states in pertinent part that "the term 'contractor' does not include an entity that is a material supplier." And §5.2(2) defines "material supplier" not to include an entity that "also engages in other construction, prosecution, completion or repair work at the site of the work." This aspect of the Rule is consistent with the statutory text of the DBRA as well as the case law.

Typically, material supply firms are companies whose *sole* responsibility on a project is to furnish materials, such as lumber, sand, gravel, and ready-mixed concrete. *See, e.g.*, *Doyle v. Missouri Valley Constructors, Inc.*, 288 F. Supp. 121, 124-25 (D. Co. 1968) (ready-mix concrete dealer whose "sole purpose" was to deliver goods was a supplier, not a subcontractor); *Goldstein v. Acme Concrete Corp.*, 103 So. 2d 202, 204 (Fla. 1958) (concrete producer was a material supplier where its "sole responsibility was to deliver the ready mixed concrete to the job site").

A construction contractor, on the other hand, is an entity that "performs *for* and takes *from the prime contractor"* specific work set out in the original contract, and thus excludes ordinary material suppliers. *Clifford F. MacEvoy Co. v. United States*, 322 U.S. 102, 108-09 (1944) (defining "contractor" and "subcontractor" under the Miller Act and holding that it does not include those that only supply

14

materials);[4] *see also Aetna Casualty & Surety Co. v. United States*, 382 F.2d 615, 617 (5th Cir. 1967) (relying on *MacEvoy's* definition of subcontractor); AAM 10, at 3-4 (DOL adopting *MacEvoy's* definition of "contractor" and "subcontractor" for DBRA purposes).    Thus, the Rule's exclusion of material suppliers from the definition of "contractor" is consistent with the case law.

Here, the issue is whether an entity that unquestionably is a contractor or subcontractor for purposes of the DBRA must pay prevailing wages to a mechanic or laborer who may be performing material supplier activities on the site of the work. The Rule's answer that any laborer or mechanic employed by a contractor or subcontractor directly on the site of the work must be paid prevailing wages, is entirely consistent with the DBRA's statutory text.

The DBRA does not differentiate between types of entities that are otherwise contractors and subcontractors, or between laborers and mechanics who work for contractors and subcontractors.    Instead, the DBRA requires that, "the contractor or subcontractor shall pay **all** mechanics and laborers employed directly on the site of

---

[4]      *MacEvoy* is instructive because the DBA has a "close relationship" to the Miller Act. *See* AAM 5, at 3 (Dec. 26, 1957) ("The close relationship between the Miller Act and the [DBA] is shown in both the House and Senate Reports.").    For this reason, enforcement agencies and the courts have consistently relied on interpretations of the Miller Act – and its predecessor, the Heard Act – in interpreting provisions of the DBA. *See, e.g.*, AAM 5*; H.B. Zachry Co. v. United States*, 170 Ct. Cl. 115, 129 (1965); *District of Columbia v. DOL*, 819 F.3d 444, 452-53 (D.C. Cir. 2016).

the work" prevailing wages "regardless of any contractual relationship that may be alleged to exist between the contractor or subcontractor and the laborers and mechanics." 40 U.S.C. § 3142(c). Stated differently, *all* laborers and mechanics working for *any* contractor or subcontractor on the site of the work are covered by the DBRA.

As noted above, DOL has consistently interpreted the DBA's phrase "laborers and mechanics" to include "workers whose duties are mainly manual or physical in nature." AAM 10, at 3; 48 Fed. Reg. at 19,543; 88 Fed. Reg. at 57,733; *see also Am. Sur. Co. of N.Y. v. United States ex rel. Barro-Agree Lab'ys*, 76 F.2d 67, 68 (5th Cir. 1935) (finding supervisor was covered by the Heard Act because "the term 'labor' . . . refers to physical labor" and supervisor had engaged in "hard physical labor"). Accordingly, requiring "contractors and subcontractors" that self-perform material supply work to pay prevailing wages for physical labor – *e.g.*, onsite loading and unloading – is consistent with the Act's statutory text.

Case law is also clear that a construction contractor that performs for and takes from the prime contractor may furnish both labor *and* material without losing its contractor status. *See, e.g.*, *United States use of Pool Constr. Co. v. Smith Road Constr. Co.*, 227 F. Supp. 315, 318 (N.D. Okla. 1964) (explaining that "a subcontractor is such and not a materialman even though he may furnish materials going into his work"); *John R. Hess, Inc. v. Brecksville Asphalt Paving Co.*, No.

16

43430, 1981 Ohio App. LEXIS 10521, at *3 (Ohio App. Ct. Nov. 5, 1981) (explaining that any person who "undertakes to construct an improvement to real property is considered a subcontractor and not a materialman, even though that person has also supplied materials for use in the construction."); *American Bldgs. Co. v. Wheelers Stores*, 585 P.2d 845, 848 (Wyo. 1978) (defining a materialman as "one who merely furnishes materials to the owner or contractor" and a subcontractor as "one who not only furnishes materials, but installs them"); *Peterson v. Freiermuth*, 17 Cal. App. 609, 614 (1911) (overruled on other grounds) (a "person who furnishes the materials also, and by the same contract, furnishes or performs labor upon and in the construction of the building" will "cease to be materialmen and become original contractors or subcontractors").

DOL's material supplier rule is therefore consistent with well-settled case law delineating the distinction between a construction contractor that self-performs material supply work and a standalone material supply company. The material supplier rule also is consistent with the text of the DBA requiring "contractors and subcontractors" to pay prevailing wages to "laborers and mechanics."

Finally, AGC's argument that DOL's regulation places contractors that self-perform material supply work at a competitive disadvantage is not persuasive. The legislative history of the DBRA demonstrates that the Davis-Bacon Act was "not enacted for the benefit of contractors, but rather to protect their employees from

17

substandard earnings . . ." *Unites States v. Binghamton Constr. Co.*, 347 U.S. 171, 176-77 (1954); *see also* 74 Cong. Rec. 6,510 (daily ed. Feb. 28, 1931) (Rep. Bacon emphasizing the need to preserve local labor standards); *see also* Hearings on H.R. 16619 Before the H. Comm. on Labor, 71st Cong., at 20 (Jan. 31, 1931) (same).

## II.    Appellees have not established irreparable harm.

### A. AGC failed to satisfy the "irreparable injury" prong of the preliminary injunction test.

To establish irreparable harm, a plaintiff must demonstrate "a significant threat of injury from the impending action" and "that the injury is imminent." *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1987). A "[s]peculative injury is not sufficient" to show irreparable harm. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985); *see also ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 694 (N.D. Tex. 2015). Neither the District Court, nor the AGC, pointed to any evidence demonstrating that any injury is imminent. The AGC has provided no evidence that any of its members are currently bidding on, or plan to bid on, a DBRA-covered project.

Moreover, as DOL argued below, the fact that AGC waited ***seven*** months from the Rule's promulgation to request emergency relief strongly undercuts the argument that injury is substantial and imminent. *Massimo Motor Sports LLC v. Shandong Odes Indus. Co.*, No. 21-CV-02180-X, 2021 U.S. Dist. LEXIS 246404, at *5 (N.D. Tex. Dec. 28, 2021) ("[a]bsent a good explanation," delay "militates against the

issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief."); *see also Crossover Mkt. LLC v. Newell*, No. A-21-CV-00640-JRN, 2022 U.S. Dist. LEXIS 99921, at *3 (W.D. Tex. Jan. 12, 2022) (finding "delay in seeking injunctive relief" alone "fatal").

The District Court held that AGC and its members will suffer irreparable harm from "nonrecoverable compliance costs." ROA.775 (citing *Rest. Law Center v. United States Dep't of Lab.*, 66 F.4th 593, 597-98 (5th Cir. 2023)). With respect to the truck driver provision, AGC failed to explain how the Rule will impose *new* compliance costs not already incurred by DBRA-covered contractors. Longstanding DOL guidance that pre-dates the truck driver provision already required contractors and subcontractors to pay prevailing wages to truck drivers for time spent on activities such as loading and unloading materials and supplies, if such time is not "de minimis." DOL, FOH, Ch. 15, Sec. 15e22(a)(2); *see also E.T. Simonds Constr. Co.*, ALJ No. 2021–DBA–00001, 2022 DOL Ad. Rev. Bd. LEXIS 25. Presumably, AGC's members who hire truck drivers to assist on DBRA projects, are already monitoring their employees' time for the purpose of complying with DOL's FOH. The regulation, therefore, does not impose any new recordkeeping requirements as AGC suggests.[5]

---

[5]     In *Restaurant Law Center*, the Fifth Circuit rejected DOL's argument that the Tip Credit Rule under the Fair Labor Standards Act did not impose any new

AGC also failed to show a clear nexus between the challenged truck driver regulation and the alleged harm. *Apple, Inc., v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012) (for purposes of issuing a preliminary injunction, a nexus must exist between the alleged harm and the challenged action); *Nabors Drilling Techs. USA v. Helmerich & Payne Int'l Drilling*, No. 3:20-cv-03126-M, 2022 U.S. Dist. LEXIS 29431, at *11-15 (N.D. Tex. Feb. 18, 2022). That is, the risk of harm that AGC complains of – i.e., DBRA application to onsite transportation activities that are more than "de minimis" – exists independent of the truck driver regulation. *See, e.g.*, DOL, FOH, Ch. 15, Sec. 15e22(a)(2). It is also worth noting that the evidentiary hearing before the District Court took place in June 2024 – *eight months* after the Rule went into effect – and not one witness could point to a project on which they were harmed by the truck driver or material supplier provisions.

---

compliance costs. 66 F.4th at 599-600. That rule not only codified a longstanding threshold observed by the agency, but it *also* imposed a "brand-new" one. *Id*. at 599. Here, the truck driver provision codifies a standard identical to the one in the agency's longstanding guidance – the de minimis standard.

## CONCLUSION

For the reasons set forth above, along with those submitted in Appellant's brief, NABTU respectfully requests that this Court reverse the District Court's order granting Appellee's motion for a preliminary injunction.

Dated: December 4, 2024                    Respectfully,

*/s/ Esmeralda Aguilar*
Esmeralda Aguilar
Gwen Byrne
Sherman Dunn, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
Phone: (202) 785-9300
Fax: (202) 775-1950
aguilar@shermandunn.com

*Counsel for Amicus NABTU*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,972 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface, 14-point Times New Roman, using the word-processing system Microsoft Word 2016.

*/s/ Esmeralda Aguilar*
Esmeralda Aguilar

*Counsel for Amicus NABTU*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

*/s/ Esmeralda Aguilar*
Esmeralda Aguilar

*Counsel for Amicus NABTU*